## JOSEPH PRAPUOLENIS v. GOEBEL CONSTRUCTION COMPANY, Appellant.

### Division Two, July 16, 1919.

1. **SCAFFOLD: Movable Platform.** It is a matter of common knowledge that a platform for the use of workmen in erecting a large and tall building is readjusted and moved either laterally or perpendicularly as the work on the walls progresses, but it is none the less a scaffold on that account. Where the entire wall of a building, sixty or eighty feet long and fifty or sixty feet high, was separated into sections called panels, and the platform on which the men worked in removing the forms was moved from panel to panel as the work progressed, the platform was a scaffold within the meaning of Section 7843, Revised Statutes 1909.

2. ———: **Negligence: Specific Acts: Fall: Burden of Proof.** Testimony that one of the chains supporting the scaffold had become unfastened will support an inference that it was insecurely fastened. But it is not necessary under the statute (Sec. 7843, R. S. 1909) to prove a specific act of negligence which caused the scaffold to fall. The statute requires that the structure "shall be well and safely supported" and "so secured as to insure the safety of persons working thereon," and this language means that the giving way of scaffold and the consequent injury of a workman raises a prima-facie presumption that his employer had failed of his duty and places the burden on him to show that it gave way without any negligence on his part. The statute would possess no force or effect if the injured workman were required to point out a specific defect in the scaffold furnished him, and which fell, causing his injury.

3. ———: ———: ———: ———: **Res Ipsa Loquitur.** While the doctrine of *res ipsa loquitur* does not generally apply to a case arising between master and servant, it is so applied where the injury to the servant is caused by some appliance peculiarly within the master's knowledge and control, of which the servant is ignorant and with whose construction or arrangement he has nothing to do.

4. **NEGLIGENCE: Fellow-Servants: Carpenter and Common Laborer.** A carpenter constructed the platform on which the men were to work in taking down the scaffolding, and a common laborer had nothing to do with its constructing and knew nothing about it. Later after the platform was completed, the carpenter and laborer

stood on the platform and were working together in taking down and receiving the timbers of the scaffold when the platform fell, injuring the laborer. *Held,* that they were not fellow-servants in the work of constructing the platform, and as the laborer's action for damages is based on a violation of the statute requiring employers to furnish safe scaffolds or structures for such work, his action is not barred on the theory that his injuries were due to the negligence of a fellow-servant.

5. ———: ———: **Detached Employee.** When the master uses one servant to construct a place in which he and the other servants are to work, and the place is made unsafe by that servant, and a fellow-servant who was not employed in that particular work is injured because of the defect, he is not the fellow-servant of the one who did that particular work so as to defeat recovery.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

AFFIRMED.

*Leahy, Saunders & Barth* for appellant.

(1) Defendant's instruction in the nature of a demurrer to the evidence should have been given. (a) Sec. 7843, R. S. 1909, does not cover a swinging and shifting platform such as shown in the instant case. This doctrine is known as the "shifting" or "transitory" device doctrine. Livergood v. Lead & Zinc Co., 179 Mo. 229; Anderson v. Missouri Granite & Const. Co., 178 S. W. 737; Deiner v. Sutermeister, 266 Mo. 514-19 (b) Sec. 7843, R. S. 1909, does not preclude the legal effect of a negligent act of a fellow servant, when such act is the direct and proximate cause of plaintiff's injury. Williams v. Ransom, 234 Mo. 55. (c) It devolves upon the plaintiff who relies upon the absence of the relationship as fellow servants to prove its non-existence. McGowan v. Railroad, 61 Mo. 528; Blessing v. Railroad, 77 Mo. 410; Ryan v. McCully, 123 Mo. 636; Shaw v. Bambrick-Bates Construction Co., 102 Mo. App. 666; Sheehan v. Prosser, 55 Mo. App. 569; Ryan v. Christian Board of Publication, 199 S. W. 1032. (d) By plaintiff's allegation and evidence the direct and proxi-

mate cause of his injury was the negligent manner in which the particular chain in question was secured, when the platform was changed by the workmen during the progress of the work. (e) When plaintiff's evidence is uncontradicted, the question whether other workmen are fellow servants of the plaintiff is a question of law for the court alone to decide. McGowan v. St. Louis & Iron Mountain R. Co., 61 Mo. 528; Marshall v. Schricker, 63 Mo. 308. (f) In the case at bar the other workmen were fellow servants of the plaintiff. Richardson v. Mesker, 171 Mo. 666; Ewan v. Lippincott, 47 N. J. L. 192; O'Brien v. American Dredging Co., 53 N. J. L. 291. (g) When the evidence is uncontradicted that the negligent act of a fellow-servant is the direct and proximate cause of plaintiff's injury, a verdict should be directed for defendant. McDermott v. Pac. Railroad, Co., 30 Mo. 115; Brothers v. Carter, 52 Mo. 372; Higgins v. Mo. Pac. R. R. Co., 104 Mo. 413; Warmington v. Railroad, 46 Mo. App. 159. (2) This case in its last analysis rests upon the *res ipsa loquitur* doctrine which does not apply in master and servant cases. Sec. 7843, R. S. 1909; Deiner v. Sutermeister, 266 Mo. 514; White v. Montgomery Ward & Co., 191 Mo. App. 270; Williams v. Ranson, 234 Mo. 75; Forbes v. Dunnavant, 198 Mo. 210; Hedrick v. Kahmann, 174 Mo. App. 57; Removich v. Construction Co., 264 Mo. 43.

*Joseph A. Wright,* for respondent.

(1) The testimony leaves no doubt that the scaffold "was not well and safely supported," as required by Sec. 7843, R. S. 1909. This was sufficient evidence to warrant a finding of negligence, particularly in view of the obvious peril to the workmen from failure to exercise proper care in supporting the scaffold. Reber v. Tower, 11 Mo. App. 199; Denker v. Wolff Milling Co., 135 Mo. App. 340; Mayer v. Atlantic Refining Co., 254 Pa. 544; Blohm v. Boston Elevated Railway Co., 221 Mass. 390; Bartlett-Hayward Co. v. Maryland, 121 Md.

1. (2) Plaintiff had nothing whatever to do with the erection of the scaffold, and therefore he cannot be regarded as the fellow-servant of Clark, who constructed it. Stapleton v. Hummel Mfg. Co., 202 S. W. 369; Koerner v. St. Louis Car Co., 209 Mo. 141; McGrath v. Vogel, 182 S. W. 813; White v. Montgomery Ward & Co., 191 Mo. App. 268; Lang v. Bailes, 19 N. D. 582. (3) The statute (Sec. 7843, R. S. 1909) is mandatory, and imposed the non-delegable duty on defendant to have the scaffold "well and safely supported." Deiner v. Sutermeister, 266 Mo. 505. Manifestly, if it had been well and safely-supported, and the statutory mandatory observed, plaintiff would not have been injured. It is a case of statutory negligence made negligence *per se* by the law-making authority. Thompson Law of Negligence, par. 10; Burt v. Nichols, 264 Mo. 1; Johnson v. Snow, 201 Mo. 450; Yall v. Snow, 201 Mo. 511; Turner v. Railroad, 78 Mo. 580; Sluder v. St. Louis Transit Co., 189 Mo. 107; Stewart v. Ferguson, 164 N. Y. 553, 556; Cady v. Interborough Rapid Transit Co, 195 N. Y. 415, 30 L. R. A. (N. S.) 30; Madden v. Hughes, 185 N. Y. 466; McDonald Co. v. Manns, 177 Fed. 203; Steel & Masonry Contracting Co. v. Reilly, 210 Fed. 437; New York R. R. Co. v. Mooney, 223 Fed. 626. (4) The fact that defendant erected a separate and complete scaffold for each section of the building cannot defeat liability. Since each scaffold at the particular section was a separate and complete place to work, its erection carried with it the duty to make each scaffold safe. Murray v. Paine Lumber Co., 155 Wis. 409; Feldman v. Mackey Co., 161 N. Y. Supp. 564; Swenson v. Wilson Mfg. Co., 102 App. Div. (N. Y.) 477; Steel & Masonry Contracting Co. v. Reilly, 210 Fed. 437. If defendant's contention that although the ends rested on solid supports, it is relieved from liability because the center rested upon chains, then the law can be defeated by adopting the exceeding perilous method of suspending the scaffold with ropes and chains. In truth, this dangerous method, apparently adopted to save expense, is the cause of

these workmen being injured and killed. It is the use, not the method of supporting the scaffold, that determines liability. If fastened by ropes or chains, it remains a scaffold within the meaning of the law. Deiner v. Sutermeister, 266 Mo. 505; Madden v. Hughes, 185 N. Y. 466; Flannigan v. Ryan, 89 App. Div. (N. Y.) 624, 85 N. Y. Supp. 947; Frid v. Benton, 69 L. J. Q. B. 436, 82 L. T. 193.

WHITE, C.—The plaintiff obtained judgment against defendant in the sum of fifteen thousand dollars for personal injuries received while employed by the defendant and alleged to have been inflicted through the negligence of defendant. Defendant appealed from that judgment.

The plaintiff was employed as a common laborer. The defendant had erected a concrete building to be used as a packing plant for the St. Louis Independent Packing Company. After its erection the plaintiff was injured while assisting in removing the forms which had been used in constructing the building.

The building was estimated to be between sixty and eighty feet in length and was fifty or sixty feet in width. It was sixty feet high. There had been built up along the walls on the inside of the building for the use of the workmen a framework for stationary platforms, extending to within a few feet of the ceiling. This left an open space in the centre of the building about thirty-five feet wide from the stationary framework of the scaffold on one side to the stationary framework of the scaffold on the other side. The gang of men with whom the plaintiff was working were taking down the forms from the top of the building. In order to do this a platform was constructed across the thirty-five feet of space between the stationary scaffolds on the sides in this manner: a swinging beam made of two-by-sixes about thirteen feet long, nailed together at the ends, running lengthwise of the building in the centre of this space, was suspended and supported by chains depend-

ing from the roof. In the concrete roof there were holes three inches in diameter, through which the chains were let down. Planks were then laid across from the fixed framework on each side of this swinging support, so that it made a platform thirty-five feet long and about thirteen feet wide, extending crossways of the building, supported on each end by the solid framework, and supported in the middle by the swinging beam mentioned. The chains which went through the holes in the roof to support this structure were double and fastened together at the top. There was a large knot in one end of each chain, while the other end was wired to that knot. A four-by-four block eighteen inches long was thrust through the loop thus made. Each end of the four-by-four block rested on a short plank about a foot long and five-eighths of an inch thick and five or six inches wide, perhaps to protect the concrete.

On the 5th day of August, 1915, the plaintiff and three other men were working on the platform described. One of the four was a man named Clark, a carpenter. It seems that Clark was engaged in detaching the lumber used in the forms and handing it to the plaintiff, who in turn handed it down to another laborer. While they were so engaged one of the chains became detached from its fastening on the roof, the support of the scaffold gave way, and the four men were precipitated to the bottom of the building sixty feet below. One of them was killed and the others severely injured. All of them or their representatives sued and recovered judgments against the Goebel Construction Company. The cases other than that of the appellant went to the St. Louis Court of Appeals, where they were affirmed.

The plaintiff was a common laborer. Clark, the carpenter who was working with him at the time of the injury, had constructed the scaffold upon which they were working at some time previous to that. The plaintiff had nothing to do with that part of the work and didn't know when it was done.

There was some evidence indicating that the ends of the chain had been insecurely fastened around the block which supported it on top of the building, or had become insecurely fastened in the progress of the work, so that it slipped through the hole and let down one end of the cross-piece which supported the platform. The building extended in an easterly and westerly direction, and as described by one of the witnesses ''the farthest chain west had become unfastened and the men were precipitated to the bottom, scaffolding and all.''

I. The plaintiff seeks to recover on the ground that his injury was caused by a failure on the part of the defendant to comply with Section 7843, Revised Statutes 1909, which is as follows:

Scaffold.

''All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon. All persons engaged in the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or near by.''

Appellant asserts that the section does not cover the case of what it terms a ''swinging and shifting platform'' such as shown in the evidence in this case. In this appellant makes two objections to this platform as a scaffold. It was a shifting platform, it is alleged, because it was moved from time to time as the work required. It appears from the testimony that the entire length of the building was separated into sections called panels, there being eight panels. The men took down the forms for the first panel at one end of the building, then the platform was moved to the next panel by moving the chains on the roof to convenient holes further

along. The platform was changed in that way from panel to panel, and at the time it broke down the men were working on the fifth panel. It is urged by appellant that because this platform was moved from time to time it was not a scaffold; that a scaffold must be a fixed and stationary support for the men at work. It is a matter of common knowledge that a platform for any kind of workmen in erecting a building is readjusted and moved either laterally or perpendicularly as the work on the wall of a building requires, and it would be none the less a scaffold on that account. The scaffolding on the sides of the building, made for the purpose of supporting the workmen, was evidently changed from time to time in its level as the men would mount in their work.

The other objection is that this is a swinging platform and therefore it is not a scaffold within the meaning of the statute. The effect of this position is that the employer by making the support of his scaffold a swinging or vibrating one instead of a fixed or stationary one, and thereby rendering his platform less safe, escapes the obligation and penalty of the statute. This would put a premium upon the very neglect against which the statute is aimed. This court had occasion to construe this section and define the terms "scaffolds" or "structures" to which it applies. [Deiner v. Sutermeister, 266 Mo. 505.] This was said, l. c. 518: "It is plain that it does include by the use of the words 'scaffolds or structures' all stationary platforms, staging, trestles and other similar false work used in erecting, or tearing down, buildings of any kind, in addition to the contrivance connoted by the use of the general word scaffold." Citing many cases. And further on the same page: "Moreover, as stated above, we think it is obvious from the very context of Section 7843 that in the clause 'scaffold or structures' the last word is *ejusdem generis,* and said clause is to be construed as meaning scaffolds, or *contrivances and appliances of similar use and nature to scaffolds, viz., platforms, staging, trestles*

*of whatever kind.''* (Italics ours). See, also, Loehring v. Construction Co., 118 Mo. App. 163. We think the structure was within the terms of the statute.

II. It is further claimed by appellant that there is no evidence of any specific negligence of the defendant which caused the injury complained of. It was stated in the testimony that one of the chains supporting the platform had become unfastened; it might be said that it was a proper inference from this that it was insecurely fastened. The chain was fastened together with wire around the block of four-by-four and could only have become unfastened if the fastening was insecure. The jury was required to find that the defendant failed to have one of said chains so fastened as to well and safely support the scaffold.

Specific Negligence.

However, was it necessary to prove a specific act of negligence as the cause of the falling of the scaffold? Where the statute imposes a duty to provide safety appliances of any kind for protection of persons from injury, the failure of the duty imposed is negligence *per se.* [Stafford v. Adams, 113 Mo. App. l. c. 721.] In a case where machinery is required to be guarded or fire escapes provided, and where such statutory duty is violated, the injury or loss in such case is presumed to be in consequence of that failure; the doctrine of *res ipsa loquitur,* is said to apply. [Burt v. Nichols, 264 Mo. l. c. 18.] In such cases the entire absence of a guard around machinery or of a fire escape is easy to prove. Here, however, arises a question of fact as to whether the scaffold provided was safe. It is contended by the defendant that besides the mere fact that the platform gave way, there would have to be some proof of a specific defect in it. The statute, Section 7843, requires that the structure "shall be well and safely supported" . . . and so secured as to *insure* the safety of persons working thereon." The use of this language would indicate that a collapse or giving way

of such platform and consequent injury would raise a prima-facie presumption that the employer had failed of his duty and would place the burden upon him to show that it gave way without any negligence on his part.

The State of New York has a statute very similar to the one under consideration here, and it is there held, construing the statute, that the fall of such a scaffold, in the absence of evidence of any other producing cause, points to the omission of the duty enjoined by the statute in its construction and makes out a prima-facie case. [Stewart v. Ferguson, 164 N. Y. 553; Steel and Masonry Contracting Co. v. Reilly, 210 Fed. 437, l. c. 439.]

It is usually held, in the absence of a statute, where a scaffold falls when used in the ordinary way with no special strain upon it and causes an injury the doctrine of *res ipsa loquitur* applies. [Johnson v. Roach, 82 N. Y. Supp. 203.] While doctrine of *res ipsa loquitur* does not generally apply to a case arising between master and servant, there are many cases in which it is made to apply the same as in cases of persons in other relations. It is applied particularly to falling scaffolds which are provided for servants to use, when the servants have nothing to do with their construction. [Cleary v. Genl. Contr. Co., 101 Pac. (Wash.) 888; Westland v. Gold Coin Mines Co., 101 Fed. 59.] See 4 Labatt on Master and Servant, sec. 1601, note on pp. 4872-5, where the doctrine is discussed at length in connection with master and servant and the furnishing of scaffolds, platforms and safe places to work. [Robinson v. Consolidated Gas Co., 28 L. R. A. (N. S.) 586, 194 N. Y. 37.]

There are many cases in this State in which the doctrine of *res ipsa loquitur* is applied between master and servant, where the injury to the servant is caused by some appliance peculiarly within the knowledge and control of the master, of which the servant is ignorant and with which he had nothing to do. [Klebe v. Dis-

tilling Co., 207 Mo. l. c. 487; Johnson v. Railway Co., 104 Mo. App. 588; Sackewitz v. American Biscuit Co., 78 Mo. App. l. c. 151; Burt v. Nichols, 264 Mo. l. c. 18; Ash v. Woodward & Tiernan Printing Co., 199 S. W. 994.]

The statute under consideration would possess no force or effect if the plaintiff were obliged to point out a specific defect in the scaffold or platform which was furnished him. In that case he would be entitled to recover at common law. If it wasn't the intention of the Legislature to require absolute safety in the construction of a scaffold of this kind or at least put the burden upon the employer to show that he was without fault in case of an injury from the fall of a scaffold, then the statute would serve no purpose whatever. This seemed to be the understanding of this court, though it was not decided, in the Sutermeister case, 266 Mo. l. c. 515. That case also refers to the New York decisions construing different features of this very statute. So we hold that in the absence of exculpatory showing on the part of the employer, the fall of a scaffold is prima-facie evidence of negligence on the part of the employer and a violation of the statute.

III. Appellant argues that the plaintiff is not entitled to recover in this case because the work of constructing the scaffold was done by Clark, and Clark, it is claimed, was the fellow-servant of the plaintiff. It is

Fellow-Servants.

true, at the time the scaffold gave way, Clark and the plaintiff were fellow-servants. They were working together in the same kind of work and assisted each other in taking down the timbers comprising the form. But Clark was a carpenter; that was the general work which he did. Plaintiff was a common laborer. Clark had constructed the scaffold on which they were working before this particular work began, and plaintiff had nothing to do with it and knew nothing about it. There was an entire absence of relation of fellow-servant in the work of constructing

the platform. The test of the relation as laid down, is, was the employee injured and the one inflicting the injury so associated in their work that each could observe and influence the other's conduct and report any delinquency to a correcting power, or head? [Koerner v. Car Co., 209 Mo. l. c. 154; Parker v. Hannibal & St. Joe Ry. Co., 109 Mo. 362; Stapleton v. Hummel Mfg. Co., 202 S. W. l. c. 370.] The plaintiff had no opportunity whatever to observe the work of Clark in constructing the platform and knew nothing about it. And it has been held that where workmen are working together as fellow-servants, and one of them is detached from that particular work to do some other work in relation to the general enterprise in hand, and an injury to his fellow-workman is caused by that particular detached work, with which the injured man had nothing to do, the doctrine of fellow-servant does not apply. [Raines v. Lumber Co., 149 Mo. App. l. c. 582; White v. Montgomery Ward & Co., 191 Mo. App. l. c. 272; see Most v. Goebel Constr. Co., 203 S. W. l. c. 477.] That is, when the master uses one servant to construct a place to work, and the place is made unsafe by that servant, and a fellow-servant who was not employed in that particular work is injured because of the defect, he is not the fellow-servant of the other as to that particular work so as to prevent recovery. The duty to make the place safe is non-delegable. The Raines case, supra, was a scaffold case where one of two employees was caused to construct a platform by which his fellow-employee was injured.

The appellant complains of an instruction given on behalf of the plaintiff, but the objection has been fully met in the principle discussed above.

The judgment is affirmed. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the Court. All of the judges concur.

24.—279 Mo.