## CROPPER v. TITANIUM PIGMENT CO., Inc.
### No. 8936.

Circuit Court of Appeals, Eighth Circuit.
March 4, 1931.
Rehearing Denied April 17, 1931.

his duties in and about said reduction tank, he was compelled to inhale poisonous fumes arising from the acid in the tank, causing serious injury to his nose, throat, larynx, bronchial tubes, and lungs, and that the linings and membranes thereof were burned, seared, eaten away, and destroyed, and became inflamed, irritated, congested, infected, sore, and swollen, causing him to suffer from bronchitis, from a cough with occasional blood in the sputum, and causing him to suffer from pleuro pneumonia; that his stomach became burned and irritated and the linings and membranes thereof inflamed, causing him to suffer pains in the stomach; that his teeth were eaten by said acid and caused to decay, and his gums were caused to become sore and inflamed; that he was caused to suffer from difficulty in getting his breath, from severe pains in the chest while breathing, from severe shock to his nervous system, from weakness, headaches, restlessness, and insomnia, all as a direct and proximate result of the negligence of the defendant set out in the petition; that his said injuries were serious and permanent, causing him to suffer great pain of body and anguish of mind; that the defendant knew, or by the exercise of ordinary care could have known, that the fumes arising from the reduction tank were poisonous and dangerous to plaintiff's health, and that plaintiff, while working about said reduction tank, would be compelled to inhale the poisonous fumes arising therefrom, and that by reason thereof his health was apt to be seriously impaired.

Specific acts of negligence were alleged as the direct cause of plaintiff's injuries, which may be summarized as follows: (1) That defendant failed to exercise ordinary care to employ any reasonably effective means, methods, or appliances to prevent plaintiff's health from being impaired by said fumes, although by the exercise of ordinary care, it could have so done; (2) that the defendant, although it knew, or could in the exercise of ordinary care have known, that plaintiff was ignorant of the dangers to his health arising from exposure to the fumes, negligently failed to exercise ordinary care to warn plaintiff that his health might be impaired thereby; (3) that the defendant assured plaintiff that he could work with reasonable safety in the place furnished him by the defendant, and that the fumes arising therefrom would not harm him, plaintiff being ignorant of the danger, and that, by reason of such negligent assurance, the plaintiff continued work about the reduction tank and to inhale the fumes arising therefrom;

Stewart D. Flanagan and Charles M. Hay, both of St. Louis, Mo., for appellant.

William H. Allen, W. Edwin Moser, and John S. Marsalek, all of St. Louis, Mo., for appellee.

Before KENYON and GARDNER, Circuit Judges, and MUNGER, District Judge.

GARDNER, Circuit Judge.

This is an action for personal injuries, in which the appellant was plaintiff below. The parties will be referred to as they appeared in the lower court. In his amended petition, plaintiff alleged that on the 3d day of July, 1925, and for several months prior thereto, he was employed by the defendant in its chemical manufacturing plant in St. Louis, Mo., as a laborer; that under the orders and directions of the defendant he was engaged in operating a reduction tank, in which there was used strong, pungent, and poisonous acids; that, in the performance of

(4) that although defendant knew, or in the exercise of ordinary care could have known, that plaintiff was ignorant of the danger arising from the exposure to the fumes, it negligently directed and caused him to work about the reduction tank without employing any means or methods to prevent him from inhaling the fumes, although this could, in the exercise of ordinary care, have been done; (5) that the defendant, in violation of section 6819, Revised Statutes of Missouri 1919, failed to provide for and place at the disposal of plaintiff and maintain in good condition, without cost to the plaintiff, working clothes to be kept and used exclusively by him; (6) that the defendant negligently and unlawfully, and in violation of section 6820, Revised Statutes of Missouri 1919, failed as often as once every calendar month to cause the plaintiff to be examined by a competent, licensed, and reputable physician, for the purpose of ascertaining if there existed in the plaintiff any industrial or occupational diseases or illness due or incident to the character of work in which plaintiff was engaged; (7) that the defendant negligently and unlawfully, and in violation of section 6829, Revised Statutes of Missouri 1919, failed to post in a conspicuous place in the room in which plaintiff was required to work an appropriate notice of the known dangers to the health of its employees, particularly the plaintiff, arising from the poisonous fumes and acid, and simple instructions as to any known means of avoiding, so far as possible, the injurious consequences thereof, although it was possible for defendant to have done so, and thereby have avoided plaintiff's injuries.

On motion of defendant, the court struck from the petition the allegations summarized in the above subdivision 6, charging the defendant with negligence in having failed to have plaintiff examined by a competent, licensed, and reputable physician once in every calendar month, as required by section 6820, Revised Statutes of Missouri 1919, and also struck the allegations summarized in the above subdivision 7, charging the defendant with negligence in having failed to post in a conspicuous place in the room in which the plaintiff was required to work, an appropriate notice of the known dangers to his health, arising from the poisonous fumes, and simple instructions as to any known means of avoiding the injurious consequences thereof, as required by section 6829, Revised Statutes of Missouri 1919. The plaintiff reserved an exception to this action of the court.

By its amended answer, defendant admitted plaintiff's employment, together with certain other formal matters; pleaded that whatever injuries plaintiff had sustained were caused by the usual and ordinary risks and dangers incident to the work and employment in which he was engaged, and that he had, by accepting and continuing in said work and employment, assumed all of the risks and dangers thereof.

The cause was submitted to a jury on instructions which are not challenged and which do not appear in the record, and the jury returned a verdict in favor of the defendant. From the judgment entered thereon, the plaintiff has appealed, assigning as errors the action of the court in striking out the above-noted paragraphs of his petition and in various rulings on the admissibility of evidence.

Plaintiff's amended petition was filed by leave of court, and hence the matters contained in the stricken paragraphs were not sought to be injected into the case by amendment during the trial. The motion to strike was therefore in the nature of a demurrer to these paragraphs.

A reference to article 6, chapter 54, Revised Statutes of Missouri 1919 (sections 6785–6833), discloses the fact that it contains many provisions for the health and safety of employees. The following sections seem pertinent to a consideration of the questions here presented:

"Sec. 6817. *Employer to provide protection to employees from diseases.*—That every employer of labor in this state engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employee to the danger of illness or disease incident to such work, trade or process, to which employees are exposed, shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process. (Laws 1913, p. 402)."

"Sec. 6818. *Articles considered dangerous to health.*—The carrying on of any process, or manufacture, or labor in this state in which antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used, employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are here-

by declared to be especially dangerous to the health of the employees. (Laws 1913, p. 402)."

"Sec. 6820. *Employees to be examined monthly by physicians.*—Every employer engaged in carrying on any process or manufacture referred to in section 6818 shall, as often as once every calendar month, cause all employees who come into direct contact with the poisonous agencies or injurious processes referred to in section 6818, to be examined by a competent licensed and reputable physician for the purpose of ascertaining if there exists in any employee any industrial or occupational disease or illness or any disease or illness due or incident to the character of the work in which the employee is engaged. (Laws 1913, p. 402)."

"Sec. 6829. *Notices to be posted in rooms—to contain, what.*—For the purpose of disseminating a general knowledge of the provisions of this article and of the dangers to the health of employees in any work or process covered by the provisions of this article, the employer shall post in a conspicuous place in every room or apartment in which any such work or process is carried on, appropriate notices of the known dangers to the health of any such employees arising from such work or process, and simple instructions as to any known means of avoiding, so far as possible, the injurious consequences thereof, and the state industrial inspector shall have prepared a notice covering the salient features of this article, and furnish a reasonable number of copies thereof to employers in this state affected by the provisions of this article, which notice shall be posted by every such employer in a conspicuous place in every room or apartment in such place of employment. The notices required by this section shall be printed on cardboard of suitable character and the type used shall be such as to make them easily legible. (Laws 1913, p. 402, amended Laws 1919, p. 448)."

The first ground of the challenge to paragraph 6 was that section 6820 applies only to employers engaged in carrying on any process of manufacture referred to in section 6818, and that the plaintiff's petition did not set forth facts sufficient to bring the defendant within that section. The petition directly charged that the defendant was engaged in the manufacture of chemicals and that in the operation of its plant there was used strong, pungent, and poisonous acid. The above section 6818 specifically enumerates various substances assumed to be dangerous to health, and then adds, "or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances." It must be borne in mind that this motion was not one to require the plaintiff to make his petition more definite and certain, but challenged its sufficiency, and the facts set forth in the petition were, in our judgment, sufficient to bring the defendant within the provisions of these statutes.

The next ground stated in the motion was that the statutes were too vague, uncertain, and indefinite to be enforced, and hence void. While this was apparently the ground urged in the lower court, it is not urged on this appeal, and the question would seem to have been put to rest by the decision of the Supreme Court of Missouri in the case of Boll v. Condie-Bray Glass & Paint Co., 321 Mo. 92, 11 S.W.(2d) 48, 51, where this specific contention was presented and denied by that court. Similar statutes were before this court in Wagner Electric Corporation v. Snowden, 38 F.(2d) 599, 604, and in referring to section 6818 it is there said: "The Supreme Court of Missouri has held that a violation of the above statute is negligence per se, Boll v. Condie-Bray Glass & Paint Co. [321 Mo. 92] 11 S.W.(2d) 48; and the general rule in Missouri is that the violation of a protection statute is negligence per se, Beck v. Wurst Coal & Hauling Co. (Mo. App.) 293 S. W. 449; Prapuolenis v. Goebel Construction Co., 279 Mo. 358, 213 S. W. 792. This court has enforced the same principle or rule in Texarkana & Ft. Smith Ry. Co. v. Parsons (C. C. A.) 74 F. 408; Hover & Co. v. Denver & R. G. W. Ry. Co. (C. C. A.) 17 F.(2d) 881."

What has been said with reference to the motion to strike subdivision or paragraph 6 is equally applicable to that part of the motion directed to paragraph 7. The ground of that part of the motion was that the petition did not set forth facts bringing the defendant within the provisions of section 6829 above quoted. These and similar statutes have received a liberal construction by the Supreme Court of Missouri in Boll v. Condie-Bray Glass & Paint Co., supra, where the court, among other things, said: "The state is interested in the health as well as the safety of those engaged in manual labor; hence our lawmakers have enacted statutes which contain many provisions for the welfare of such workers, both men and women as well as children. * * * As above stated, these sections of the statute [6817, 6818, 6819, 6825 and 6827] were enacted for the pur-

pose, the very laudible purpose, of preventing diseases among laborers, which diseases are incident to the operation of such business. Courts are not called upon to pass upon the reasonableness, the wisdom, or the necessity of a legislative act, as such matters are alone for the consideration of the legislative body." See, also, Poppen v. Wagner Electric Corp. (Mo. App.) 2 S.W.(2d) 199; Cole v. North American Lead Co., 240 Mo. 397, 144 S. W. 855; Simpson v. Witte Iron Works Co., 249 Mo. 376, 155 S. W. 810.

In Wagner Electric Corporation v. Snowden, supra, the lower court, in an action brought under certain of these statutes, submitted the case to the jury on the common-law theory of failure to exercise ordinary care in furnishing the plaintiff a reasonably safe place in which to work and also upon these statutes, and this court sustained the court's instructions.

■■ By striking out these two paragraphs or subdivisions of the amended petition, the court took from the plaintiff a right secured him by the statutes of Missouri. One of the issues raised by the defendant's answer was that of assumption of risk, and these sections would seem to have a direct bearing on that issue. Failure to comply with the statutes, assuming that the facts proven brought the plaintiff's case within their purview, would, as the statutes have been construed by the Supreme Court of Missouri, constitute negligence per se. We are therefore of the view that the sustaining of this motion was prejudicial error.

■ It is urged that the court erred in sustaining objections to the testimony of various witnesses offered on behalf of the plaintiff. Frank Hunt testified that he had been employed by the defendant company in the year 1925, while the plaintiff was so employed, and that he had control of the pans of the digest department and sometimes worked on the reduction tanks; that he mixed ore with acid, put gilmanite ore in the pans, and put sulphuric acid in it, and told of the practice of placing it in the furnace until it boiled, when the pans would be removed from the furnace and emptied into a trough which ran into the reduction tanks. He was then asked: "Q. Do you know to what extent that furnace was heated?" This was objected to as being immaterial because the furnace was on another floor. Counsel for the plaintiff then stated that he wished to show the nature of the contents of the pans which were poured out into the reduction tanks, and that this could not be shown without showing the nature and extent to which they were heated, and that all of this had a bearing upon the nature of the chemicals that went into the tanks. It appearing that the contents of the furnace passed into the tanks, we are of the view that plaintiff should have been permitted to interrogate on this subject the witness who had already answered that he knew to what extent the furnace was heated. The hotter the sulphuric acid and other ingredients were made in the furnace, it may be assumed, the hotter they were when they reached the tanks, and this had a direct bearing upon the amount or extent of fumes and gases that would escape therefrom. It having affirmatively appeared that the witness was qualified to testify, and the statement of counsel disclosing the nature of his proposed testimony and its purpose, we think it was error to sustain the objection. The mere fact that a part of the apparatus or machinery was on another floor does not seem to us to be a reason for rejecting testimony with reference to the workings of the plant which, it is claimed, ultimately produced the fumes at the tank where plaintiff was employed.

■■ It is also urged that the court erred in sustaining objections to the testimony of the witnesses Sidney Russell, Jerry Bush, and Thomas Killian as to what effect the fumes had on them. It is doubtful whether proper foundation was laid for this testimony by showing that these witnesses were working under the same conditions prevailing at the time plaintiff claims to have suffered his injuries. Had proper foundation been laid, the testimony would doubtless have been admissible. E. I. Du Pont de Nemours & Co. v. White (C. C. A.) 8 F.(2d) 5. But the ruling is not reviewable here because no offer of proof was made. Federal Surety Co. v. Standard Oil Co. (C. C. A.) 32 F.(2d) 119; Hatch v. United States (C. C. A.) 34 F.(2d) 436; Sacramento Suburban Fruit Lands Co. v. Miller (C. C. A.) 36 F.(2d) 922. This rule requiring a party who seeks to review the ruling of a court on rejection of testimony to make a proffer of proof is not a mere arbitrary technical rule, but a practical one, very essential to the orderly administration of justice. For instance, the witness Bush was asked what his physical condition was when he finally left defendant's employment. If this court were permitted to decide as an abstract proposition that the question was a proper one, and should reverse the case for that reason, and it were remanded for a new trial, and the witness should then testify that he was in perfect physical

condition when he left the work, the futility of a reversal would appear, and a manifest injustice would have been done the defendant. We must therefore decline to review these rulings, and it is not clear that the questions will again arise on a new trial.

Dr. McBratney, who qualified as an expert, testified that he had examined and X-rayed the plaintiff. Based upon his examination and certain facts assumed from the testimony in the record, he was asked his opinion as to the cause of plaintiff's condition. Similar questions were propounded to Dr. Tibe. The court sustained objections to their testimony on the ground that the answers called for would invade the province of the jury. But if the questions propounded were such that the jury might not be capable of determining from the evidence, then it was proper that they should have the benefit of the opinion of an expert, even though the opinion went to the matter directly in issue. The purpose of a trial is to investigate the facts so as to ascertain the truth, and the modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness may be permitted to state a fact known to him because of his expert knowledge, even though his statement may involve a certain element of inference or may involve the ultimate fact to be determined by the jury. U. S. Smelting Co. v. Parry (C. C. A.) 166 F. 407, 410; Central Coal & Coke Co. v. Williams (C. C. A.) 173 F. 337, 339; Denver & R. G. R. Co. v. Roller (C. C. A.) 100 F. 738, 49 L. R. A. 77; Chicago, B. & Q. R. Co. v. Conway (C. C. A.) 29 F.(2d) 551; O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55, 59; Runkle v. United States (C. C. A.) 42 F.(2d) 804.

In United States Smelting Co. v. Parry, supra, this court, in an opinion by Judge Van Devanter, now Justice Van Devanter, in discussing an objection to testimony by a practical brick mason and builder of many years' experience, to the effect that a scaffold constructed and supported like the one in question was not as safe as those usually provided in like situations, but was very dangerous, said:

"The objection made was, not that the witness was not qualified to speak as an expert, but that his opinion was elicited upon a matter which it was the province of the jury to decide, and which they were capable of deciding without such testimony. It is true that in trials by jury it is their province to determine the ultimate facts, and that the general rule is that witnesses are permitted to testify to the primary facts within their knowledge, but not to their opinions. And it is also true that this has at times led to the statement that witnesses may not give their opinions upon the ultimate facts which the jury are to decide, because that would supplant their judgment and usurp their province. But such a statement is not to be taken literally. It but reflects the general rule, which is subject to important qualifications, and never was intended to close any reasonable avenue to the truth in the investigation of questions of fact. Besides, the tendency of modern decisions is not only to give as wide a scope as is reasonably possible to the investigation of such questions, but also to accord to the trial judge a certain discretion in determining what testimony has a tendency to establish the ultimate facts, and to disturb his decision admitting testimony of that character only when it plainly appears that the testimony had no legitimate bearing upon the questions at issue and was calculated to prejudice the minds of the jurors. * * *

"The most important qualification of the general rule before stated is that which permits a witness possessed of special training, experience, or observation, in respect of the matter under investigation, to testify to his opinion when it will tend to aid the jury in reaching a correct conclusion; the true test being, not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness. A reference to adjudicated cases will show the extent of this qualification, its application in actual practice, and the discretion accorded to the trial judge in that regard. In Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477, there was called in question a ruling of the Circuit Court whereby a witness of large experience in towing vessels was permitted to testify that in his opinion it was not safe or prudent for a tugboat in Chesapeake Bay to tow three boats abreast, with a high wind; that being the point to be decided by the jury."

In Central Coal & Coke Co. v. Williams, supra, the trial court admitted in evidence the opinion of certain witnesses qualified as experts, as to whether an experienced miner could determine when a rock was loose in the roof of the entry, or when the roof was unsafe, and also as to whether the entry or roof in question was in fact in a safe condition at the time plaintiff was injured. On appeal it was urged that these questions sub-

stituted the opinion of the witnesses for that of the jury and encroached upon their exclusive province. In an opinion by Judge Adams, the doctrine in the Parry Case was reaffirmed, and it was, among other things, said: "The doctrine of that case received the unanimous approval of all the judges then sitting, and commends itself to our most favorable consideration. It is inconceivable that the opinions of practical mining operatives touching the questions under review would not greatly aid the jury in the performance of its only legitimate function, to reach a correct conclusion. The subject about which the testimony was elicited was underground mining operations familiar to the witnesses as a result of actual experience, and presumably not familiar to the ordinary juror."

In O'Leary v. Scullin Steel Co., supra, the Supreme Court of Missouri said: "No layman could tell from the evidence (other than that of the experts) whether the thumb injury or the boil caused that infection. The only evidence which, to the lay mind in the jury box, could be said to have any efficacy, to point to one rather than the other as the cause of the infection, is that of experts."

The court further said in that case: "In the instant case the jury cannot, without expert testimony, get at the cause from the other evidence, because the evidence has no tendency to prove to the lay mind a relation of cause and effect. It could not logically find the cause from the expert testimony if the rule in question is applied to restrict expert opinion to what might or could result from the injury, since that does not necessarily go further than a possibility, and a mere possibility does not satisfy the burden of proof. * * * It may be said the jury may decide which of the experts it will believe, and then find accordingly. The difficulty is that, after the jury has determined which expert it will believe and credits him, it comes to nothing, because what it has concluded to believe is merely that a certain thing 'might or could' produce a stated result or condition. In this case, the fact that a cause for which appellant is liable might or could have produced the diseased ulna does not show that a cause for which appellant was not liable did not cause it."

■ But it is said that these assignments are not reviewable because there was no offer of proof made. As to some of these witnesses there might be reason for declining to review the assignments, but as to others the witness was first allowed to answer and the ruling was made on motion to strike out the answer. It therefore affirmatively appears what the plaintiff was seeking to prove by the witness, and, in view of the fact that the case must be reversed on other grounds, it seems important to refer to these questions which are likely to recur on a retrial of the action. We are of the view that the court unduly limited the scope of the testimony of plaintiff's experts, and that it was error to sustain the objections to the questions propounded to them.

■ A number of other assignments as to the rulings of the court in admitting testimony are urged. Some of these go to the limitation placed upon the cross-examination of defendant's experts. We should not be disposed to reverse the case on account of the rulings of the court in this regard, as the extent of cross-examination of witnesses, including experts, is largely a matter of discretion, although, generally speaking, a wide latitude should be allowed counsel in the cross-examination of an expert witness.

■ Finally it is urged that the court erred in sustaining an objection to the offer in evidence of a certified copy of a death certificate showing the death of one Bernard Pumpelly on the premises of the defendant on April 14, 1928, as a result of being overcome there by fumes from sulphuric dioxide gas. The superintendent of the defendant company had testified that sulphuric dioxide gas was not poisonous, and testified that he had never heard of a man dying from sulphuric dioxide gas, and that no one had ever died in defendant's plant from such poisoning. His attention was called to the death of Bernard Pumpelly, but he denied that he had died from sulphuric dioxide poisoning. Other witnesses produced by the defendant testified that there were no fumes or gases of any kind in the defendant's plant, and the defendant used several expert witnesses who testified that they had made tests of the air subsequent to the time plaintiff left defendant's employ and found no gases or fumes of a poisonous nature in the air. In response to this testimony, the plaintiff produced this certificate. A section of the Missouri Statutes (Rev. St. 1919, § 5816) then in force provides that "a copy of the record of a birth or death, when properly certified by the state registrar to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated."

In construing this statute, the Supreme Court of Missouri, in Simpson v. Wells, 292 Mo. 301, 237 S. W. 520, held (syllabus):

"The certificate of death is, under Rev. St. 1919, § 5816, prima facie evidence of all facts required to be stated therein, whether the certificate was made by the attending physician under section 5802, or by the coroner under section 5803, so that the statement he died from amputation due to street car injury, given as the cause of death which is required to be stated, is evidence that his death resulted from the injury." See, also, Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S. W. 1043.

True, the issue in this case was not the cause of the death of Pumpelly, but the cause of the alleged injury to the plaintiff; yet we are of the view that the certificate was prima facie evidence that at the time therein stated the plant or premises of the defendant, contrary to the testimony of the witnesses of the defendant, had fumes and gases arising from sulphur dioxide, and it was also evidence that such fumes were poisonous and could be the cause of death. The certificate, under the heading "Cause of Death" stated the following: "Accidental. Overcome by fumes from sulphur dioxide gas. Titanium Pigment Co., Inc., St. Louis Co." The only objection interposed to the offer was that it was irrelevant and a collateral issue. It was offered in rebuttal, and we think it was competent evidence tending to rebut the testimony of the defendant on a very vital issue.

It would unduly extend this opinion to discuss other assignments urged, and it seems, in view of our conclusion, quite unnecessary to do so.

The judgment of the lower court is therefore reversed, and the cause remanded, with directions to grant the plaintiff a new trial.