## HOOPER v. GENERAL MOTORS CORP.

No. 7887.   Decided July 31, 1953.   (260 P. 2d 549.)

516

517

See 60 C.J.S. Motor Vehicles, sec. 167. Liability of manufacturer of defective automobile. 5 Am. Jur., Automobiles, sec. 350; 142 A.L.R. 1494.

*McBroom & Hanni, Glenn C. Hanni,* Salt Lake City (*E. R. Miller, J.,* Ely, Nev., of counsel), for appellant.

*Leonard W. Elton, Max K. Mangum* and *H. Arnold Rich,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

On October 15, 1951, plaintiff and later appellant, Bonnye Hooper, was severely injured when a recently purchased 1951 Chevrolet pick-up truck she was driving on Nevada's Newark Valley Highway overturned. She sued defendant and later respondent, General Motors Corporation, assembler of the truck, to recover for injuries to herself and for damages to the truck sustained in the mishap. She charged that defendant negligently assembled, manufactured and inspected the truck which she and her son on July 21, 1951 purchased new from Hyland Motor Company of Ely, Nevada, defendant's authorized dealer. Plaintiff further claimed that the truck was equipped with a defective left rear wheel and that the failure of such wheel caused by separation into its component parts resulted in the accident.

From a verdict and judgment of "no cause of action," plaintiff appeals.

Between 6 and 6:30 p.m. of the day of the mishap, plaintiff was driving the Chevrolet truck south along the Newark Valley Highway, a gravel-surfaced country road of White Pine County, Nevada. That road runs north and south and about 14 miles east of Eureka, Nevada, it intersects with U.S. Highway 50 which runs east and west. Plaintiff was alone. She testified that she was traveling in the center of the road at about 30 miles per hour. She further testified that at a point about seven miles north of the junction

"* * * the left rear end of the pickup dropped suddenly, down, and it swerved to the left and I tried to right [sic] it to the right and it went end for end, and it seemed to be somewhat going to the right front of the fender when it went over."

The left rear wheel of the 1951 Chevrolet pick-up truck is composed principally of a "spider" and a "rim." The "spider" is the center part of the wheel that bolts to the axle drum. The "rim" is that part of the wheel upon which the tire is mounted. The rim is connected to the spider by 12 rivets in sets of 3. After the accident, the spider and the rim of the left rear wheel were found completely separated. The spider remained bolted to the axle drum. The rim, with the tire still mounted though flat, was lying on the ground.

Worn and shiny spots appeared on the undersurface of four adjacent rivet holes in the rim. David H. Curtis, expert witness for plaintiff, testified that such shininess and smoothness "*** indicates there has been wear at these points." Mr. Curtis further testified that such wear

"* * * shows that there has been loose rivets in these portions in the holes 1, 2 and 3, and that looseness is caused by wear and the loose rivets would indicate there would be a movement between the spider and the rim and vibration and oscillation between the two component parts."

He further testified that the extent of the wear indicated looseness over a considerable period of time and that "***

three loose rivets would bring about an ultimate failure to the entire rim."

Testimony was given by witnesses for the defendant as to the manufacturing and inspection procedures of the Norris Thermador Company, manufacturer of the wheel, and the California plant of the Chevrolet Division of General Motors Corporation, the assembler of the truck.

Mr. Arthur Harris, an employee of and expert witness for defendant, testified that in his opinion,

"* * * the wheel was struck an extremely heavy blow by some object on the outer rim which first * * * caused the spider to distort and then shear off the rivets."

The grounds for plaintiff's appeal are basically two in number: (1) The court erred in giving the following instruction to the jury which was requested by counsel for the defendant:

"You are instructed that the fact that the rim and spider were found in a separated condition after the accident is *no evidence* of the fact that they were defective, unsound or unsafe when assembled and sold by defendant, General Motors Corporation, *nor is it evidence* of the fact that the separating of the rim and spider caused the truck to go out of control and overturn." (Emphasis added.)

(2) The court erred in admitting certain testimony into evidence, namely: (a) The opinion testimony of Mr. Arthur Harris on an ultimate fact in issue; (b) Certain testimony of Mr. Arthur Harris claimed by plaintiff to be speculative; (c) Certain testimony of Mr. Lowell G. Fouts claimed by plaintiff to be hearsay.

The instruction as given is erroneous and prejudicial.

It is well settled that the assembler of an automobile, who purchases wheels from a manufacturer, is liable to one who purchases a car from a retailer for an injury caused by the collapse of a wheel because of defects which would have been discoverable by reasonable testing or inspection. *McPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696.

Thus, to impose liability on an assembler of an automobile certain necessary elements must be made out. Plaintiff is required to show: (1) A defective wheel at the time of automobile assembly; (2) Such defect being discoverable by reasonable inspection; (3) Injury caused by failure of the wheel due to its defective condition.

Contrary to the instruction as given, the undisputed fact of post accident rim-spider separation may be (1) Some evidence of a defective wheel at the time of automobile assembly and, (2) Some evidence of accident causation. Thus the effect of the above quoted instruction was to unduly narrow the evidentiary base from which the jury could infer two of the requisite elements of plaintiff's cause. It may be that the mere separation of the spider from the rim, standing as an isolated fact, would be an insufficient factual basis for an interference that the wheel was defective at the time it was assembled on the truck. However, when viewed in relation to other evidentiary facts—namely, the worn shiny spots on the undersurface of the wheel rim; the expert testimony to the effect that such shininess indicated smoothness and wear over a considerable length of time, (the wear indicated loose rivets; loose rivets would have permitted vibration and oscillation between the component parts of the wheel and that three loose rivets could cause the ultimate failure of such a wheel) ; the age of the truck; the fact that it had gone but 6700 miles; the fact that it had no record of prior damage; the description of the mishap by plaintiff above quoted; then the fact of rim-spider separation may have provided the requisite force to tip the scales in favor of plaintiff. Certainly, reasonable men from the cumulative factual total could infer, and with the consideration of rim-spider separation may have inferred, that the wheel was defective at the time of assembly.

It is not enough to say, that though the instruction be incorrect, the fact of rim-spider separation was so implicit

in all the evidence that no prejudice resulted to plaintiff. The instruction as given withdrew from the jury a fact which was some evidence of two requisite elements of plaintiff's cause. It would be pure conjecture to say that the jury ignored the instruction. If the fact of rim-spider separation is said to be implicit in all of the evidence the instruction as given may have had the effect of causing the jury to ignore all of the evidence relating thereto to the prejudice of plaintiff.

The same reasoning applies in relation to the issue of accident causation. See *Hupp Motor Corp.* v. *Wadsworth*, 6 Cir., 113 F.2d 827; *General Motors Corporation* v. *Johnson*, 4 Cir., 137 F.2d 320.

Counsel for defendant examined Mr. Arthur Harris, qualified expert witness for defendant, in the following fashion:

"Q. * * * Do you have an opinion, Mr. Harris as to what occurred to cause the separation of the spider and rim as represented by exhibits A and B? A. I have.

"Mr. Hanni: (counsel for plaintiff) We object on the same grounds, your Honor. That is, calling for a conclusion as to the ultimate fact in issue.

"The Court: The objection is overruled.

"Q. Do you have an opinion? A. I have.

"Q. And what is that opinion? A. That the wheel was struck an extremely heavy blow by some object on the outer rim which first caused the rim to distort, pardon me, caused the spider to distort and then shear off the rivets."

Plaintiff contends that the court erred in admitting into evidence the opinion testimony of Mr. Arthur Harris on " * * * the ultimate fact in issue." In our opinion the court did not so err. Without determining whether the fact upon which Mr. Harris gave his opinion was properly characterized as "ultimate" we look to the fact itself. We are of the opinion that within

the realm of his knowledge an expert may express an opinion as to what did cause a particular occurrence or condition and in so testifying his opinion may be cast in the form of "what did" cause, as well as "what might" or "what could" have caused a particular occurrence or condition, depending upon the degree of positiveness the witness desires to give his opinion. The general rule is that

"* * * opinions as to the cause of a particular occurrence or accident given by witnesses possessing peculiar skill or knowledge—that is, experts—are admissible where the subject matter is not one of common observation or knowledge, or in other words, where witnesses because of peculiar knowledge are competent to reach an intelligent conclusion and inexperienced persons are likely to prove incapable of forming a correct judgment without skilled assistance." See 20 Am. Jur. 686, § 817; Jones Commentaries on Evidence 2nd Ed., Vol. 3, § 1313, page 2402; Wigmore on Evidence, 3rd Ed., Vol. VII, § 1976, page 121; Wigmore's Code of the Rules of Evidence in Trials at Law Rule 100 Art. 2, page 160 and Rule 107 Art. 3 (2) page 171.

For the contrary point of view see *DeGroot* v. *Winter*, 261 Mich. 660, 249 N.W. 69. See also Model Code of Evidence, Rules 401 and 409, pages 199 and 210, for a broader statement of the rule than that laid down in this case. We confine ourselves in this case to the question of expert opinion on questions of causation. The modern tendency and the rule of this court is that an expert may give an opinion as to the cause of a particular occurrence or condition regardless of whether the cause of such occurrence or condition is in dispute and regardless of whether the jury must determine which of the causes urged by the respective parties is the correct one.

The expert's opinion otherwise qualified is proper on the fact of "cause" whether such fact be labeled evidentiary, primary, reconciled, inferential, or ultimate.

We are of the opinion that the admission by the trial court of the testimony complained of in assignment of

error number two, subsections (b) and (c) as above set forth, was without error.

Because of the reasons above set forth, this case is reversed and remanded to the lower court for a new trial.

Cost to appellant.

McDONOUGH, J., concurs.

WADE, Justice (concurring specially).

Except as herein stated I concur with the prevailing opinion.

The so-called rule that opinion evidence on the ultimate question for the trier of the facts is not admissable has no tendency to lead the trier to the truth but tends to create confusion, controversy and absurd results.[1] Such rule

---

[1]See *Cropper* v. *Titanium Pigment Co.*, 8 Cir., 47 F.2d 1038, 1043, 78 A.L.R. 737 at pages 744 and 745, where the court said: "But if the questions propounded were such that the jury might not be capable of determining from the evidence, then it was proper that they should have the benefit of the opinion of an expert, even though the opinion went to the matter directly in issue. The purpose of a trial is to investigate the facts so as to ascertain the truth, and the modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness may be permitted to state a fact known to him because of his expert knowledge, even though his statement may involve a certain element of inference or may involve the ultimate fact to be determined by the jury." See also *U. S. Smelting Co.* v. *Parry*, 8 Cir., 166 F. 407, which says.

"It is true that in trials by jury it is their province to determine the ultimate facts, and that the general rule is that witnesses are permitted to testify to the primary facts within their knowledge, but not to their opinions. And it is also true that this has at times led to the statement that witnesses may not give their opinions upon the ultimate facts which the jury are to decide, because that would supplant their judgment and usurp their province. But such a statement is not to be taken literally. It but reflects the general rule, which is subject to important qualifications, and never was intended to close any reasonable avenue to the truth in the investigation of questions of fact. * * *

should be entirely discarded rather than to create an exception thereto where the question of causation is involved, as is done in the prevailing opinion. It is clear that there is no difference in the principle involved for the so-called rule is just as unsound when applied to other subjects as it would be if applied to the question of causation, and to make this fine distinction, will create more confusion, uncertainty and absurd results.

The fact that the jury must decide the ultimate questions of fact is no reason why they should not have the benefit of expert opinion the same as on questions where only evidentiary facts are involved. If the opinion evidence is such that it will aid the jury to understand their problem and lead them to the truth it is even more important that they have its aid on the ultimate facts than on facts which are not ultimate, for the ultimate facts are determinative of the case and an erroneous conclusion as to them leads to an erroneous result, whereas the jury might be mistaken on some evidentiary facts and still reach the correct result. Evidence on the ultimate facts is more pertinent and relevant than on evidentiary facts and yet under that so-called rule we reject the evidence which is more pertinent and relevant and receive evidence which is less so, not in spite of that fact but because of it. It has never been claimed that direct eye witness evidence is not admissible because it was on the ultimate facts, but in principle if such rule is good when opinion evidence is involved it should be equally good when dealing with direct evidence.[2]

"The most important qualification of the general rule before stated is that which permits a witness possessed of special training, experience, or observation, in respect of the matter under investigation, to testify to his opinion when it will tend to aid the jury in reaching a correct conclusion; * * *."

[2]See note on this subject in 78 A.L.R. 755, wherein it cites many cases and quotes the following from 11 R.C.L. 583: " 'Thus, it has been held also that an expert may state that a certain cause may have produced the result under consideration, but cannot state that

This whole rule grew out of a misunderstanding of a catch-phrase and is based on nothing more than empty rhetoric. In some early decisions some courts used the phrase "that is the question which the jury must decide" in rejecting opinion evidence on the ground that it would not tend to aid the jury to understand their problem or lead them to the truth. In so using that phrase they were simply applying the general rule applicable to all opinion evidence that it is only admissable where the witness has

in his opinion it did produce it. But it is evident that this supposed rule, when stated broadly as it often has been stated, involves great confusion of thought and leads to absurd consequences. It is certainly singular that a class of evidence which is admitted when it is only slightly pertinent should be rejected when it is of the highest pertinency. Irrelevancy is made a ground of admission, and relevancy of exclusion. Such evidence invades the province of the jury no more than does direct evidence of an eye-witness to a decisive fact. In either case, if the jury are satisfied of the trustworthiness of the evidence, it may be conclusive of the issue; but their duty is no more invaded in one case than in the other. Every expert opinion rests on an assumption of facts; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proven; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief; and, in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts. The rule leads to absurd results in its application. Thus, it is held that an expert may testify to the value of land before an alteration and to its value afterward, and that the court must charge the jury that the difference in value is the measure of damages, but that the expert cannot express an opinion as to the amount of damages. The technicality of the distinction is illustrated by the holding that facts may be elicited from the witness, from which the ultimate conclusion inevitably follows, though that conclusion cannot be stated. The court in so declaring, however, admitted that the difference was largely one of form * * *. It seems safe to say, however, that the modern tendency is decidedly towards the more liberal practice, and that sooner or later no distinction will be made between evidential and ultimate facts as subject of expert opinion.' "

knowledge on the subject which the lay jurors do not possess, which will aid them to understand their problem and lead to the truth. But later courts seized upon this catch-phrase and tortured it into meaning that all opinion evidence on the ultimate facts is inadmissible. Now the books are full of cases on this question containing so many fine distinctions and limitations thereon, that no trial judge could possibly expect to keep in mind all of them.[3]

---

[3]See my dissenting opinion on this question in *Jimenez* v. *O'Brien*, 117 Utah, 82 213 P. 2d 337, and the authorities cited and quoted therein, especially Wigmore on Evidence, 3rd Ed. Secs. 1917 to 1929. See also the American Law Institute's Model Code of Evidence, Chapt. V.

Rule 401: "Testimony in Terms of Opinion. (1) In testifying to what he has perceived, a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds (a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or (b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party. (2) The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded."

Rule 409: "Opinion Without Previous Statement of Data. An expert witness may state his relevant inferences from matters perceived by him or from evidence introduced at the trial and seen or heard by him or from his special knowledge, skill, experience or training, whether or not any such inference embraces an ultimate issue to be decided by the trier of fact, and he may state his reasons for such inferences and need not, unless the judge so orders, first specify as an hypothesis or otherwise, the data from which he draws them; but he may thereafter during his examination or cross-examination be required to specify those data."

I of course do not contend that these rules are the law of this State until they are adopted by this court either in an appropriate case or under its Rule Making power. See Section 78—2—4, U.C.A. 1953.

Another catch-phrase which is equally unsound and misleading and often used to explain why opinion evidence on the ultimate facts is not admissible is that it "would usurp the functions of the jury." The witness who offers opinion evidence on the ultimate facts does not attempt nor have the power to usurp the jury's functions any more than a direct eye-witness of the facts, or one who gives opinion evidence on an evidentiary fact. Certainly a juror would feel no more bound to follow such opinion evidence than he would the positive testimony of a direct eye-witness to the ultimate facts, or the opinion evidence of an expert on evidentiary facts. In all three cases the jury still casts its vote on the verdict. The evidence may or may not be contradicted, may have little or great weight, and the jury should give it such weight as the jury not the witness considers it entitled to under the facts and circumstances of the case. Nor is there anything about such opinion evidence which would tend to mislead the jury any more than in the other two cases, certainly no distinction in that respect can be found between opinion evidence on the ultimate fact and on an evidentiary fact.[4]

Appellate courts often overlook the fact that trial courts must rule on the admissibility of evidence immediately and on the spur of the moment, often without previous warning. The rules of evidence have developed through myriads of cases with many exceptions and fine distinctions. It took Wigmore nine volumes to explain these rules. A trial judge cannot be expected to keep all of these rules in his head and always rule in accordance with them. Here we have a rule of law which is based on no sound principle, and by this decision we overrule part of it by limiting its effect we leave it still complicated, so that the trial court must keep in mind that where the question of causation is involved opinion evidence shall not be excluded on the grounds that it is on the ultimate question of· fact which

---

[4]See cases and authorities cited and quoted in previous notes.

the trier of the facts must decide, but that as to all other matters which are otherwise appropriate for opinion evidence he can only guess which way this court will go the next time the matter is brought here for decision. To leave the law in that state seems to invite uncertainty and confusion. I think we should adopt the broad rule advocated by Wigmore, and adopted in the Model Code of Evidence of the American Law Institute.

I do not understand what is meant by the statement in the prevailing opinion

"that an expert may give an opinion as to the cause of a particular occurrence or condition regardless of whether the cause of such occurrence or condition is in dispute  *  *  *."

I see no occasion to give opinion evidence on a matter about which there is no dispute. I agree with the broad scope allowed for opinion evidence on the question of causation as expressed in the rest of the sentence above quoted and the following paragraph where it adds,

"and regradless of whether the jury must determine which of the causes urged by the respective parties is the correct one.

"The expert opinion otherwise qualified is proper of the fact of 'cause' whether such fact be labeled evidentiary, primary, reconciled, inferential or ultimate."

I also think it a long step forward that the prevailing opinion refused to quibble about whether the question here involved was ultimate or not and the form of the answer.

CROCKETT, Justice.

I concur except that I agree with the views expressed by Mr. Justice WADE in regard to opinion evidence.

HENRIOD, Justice (concurring).

I concur for the reason that the instruction objected to was erroneous and prejudicial as applied to the facts of this case.