JOHN BOLL, Appellant, v. CONDIE-BRAY GLASS & PAINT COMPANY.—
11 S. W. (2d) 48.

Division One, October 4, 1928.

*Fred Berthold* for appellant.

*Jones, Hocker, Sullivan & Angert* and *Willard A. McCaleb* for respondent.

GENTRY, J.—This case comes to us on appeal from the action of the circuit court in sustaining a demurrer to the evidence of appellant on both counts of his petition. The case is somewhat unusual in that appellant asked damages from respondent on two separate and distinct causes of action, each one due to alleged negligence and each resulting in personal injuries which he sustained.

In the first count, appellant alleged that respondent operated a paint manufacturing establishment in the city of St. Louis and used in connection therewith a freight elevator, and that appellant was employed by respondent as a laborer in connection with the handling of freight in said elevator, working under respondent's foreman, one Charles Nolte. Appellant alleged that he was directed by said foreman to remove from said elevator five barrels of lead, each weighing seven hundred pounds; that the floor of the elevator was some twelve or fourteen inches below the level of the first floor of the building, and that he complained to the foreman that the barrels of lead were too heavy for him to remove by himself, but that the foreman failed to furnish him with an additional helper. It was then alleged that th foreman directed appellant to remove the barrels by himself, that in trying to remove them from the elevator, relying on the superior knowledge of the foreman, appellant was ruptured, his back wrenched and his nervous system shattered. For such injuries, he asked damages in the sum of twenty thousand dollars. The answer to the first count consisted of a general denial.

Appellant offered medical evidence tending to show that he had been ruptured and that said rupture could have been brought about by an effort to lift or move a barrel of lead weighing seven hundred pounds. In testifying for himself, appellant said that there were five barrels of lead, each weighing seven hundred pounds, placed in the freight elevator in defendant's paint factory on the day of his alleged injury, and that he was directed by respondent's foreman, Nolte, to remove said barrels; that Nolte had charge of appellant and the other men who were employed by the respondent in its paint manufacturing establishment. When appellant discovered that the barrels of lead were in the elevator and that it was some twelve or fourteen inches below the level of the first floor, he complained to said foreman and asked for additional help. That the foreman replied, "Well, John, do the best you can. I ain't got nobody up here to help you. I am up here by myself and you will have to do the same and try to get along by yourself." Appellant testified that he further notified McClilligan, respondent's superintendent, and asked for additional help to remove the barrels of lead; but that the superintendent replied, "I could pick up one of those and carry it around the block. You can get them off by yourself." Appellant then did try to remove a barrel from the elevator by "seesawing" it back and forth on the elevator floor, and that he sustained the injury complained of, that he was treated at the hospital, incurred expenses, suffered as a result thereof, etc. As above stated, at the conclusion of appellant's evidence the court sustained a demurrer to the first count of his petition.

In the second count, appellant alleged that respondent was engaged in the paint manufacturing business in St. Louis, that he was employed as a laborer in connection with the elevator and general utility man, his duties being to carry bags of dry lead, dry paint, and dry whitening from the first to the second floor of said factory. On August 16, 1924, appellant claimed that he was overcome with fumes that arose from said dry lead, dry paint and dry whitening and dry zinc. The acts of negligence complained of consisted, first, of failure of respondent to provide appellant with a reasonably safe place in which to work; that there were mixers on defendant's premises where dry lead, dry paint, dry zinc and dry whitening were placed in large quantities, causing poisonous gases, dust and fumes to be emitted and to arise therefrom in large and harmful quantities, and that respondent negligently failed to provide proper ventilators in said room on the second floor, where appellant was required to do part of his work. That by reason of such failure, the appellant came in contact with and inhaled fumes, gases and dust thrown off by said substances and received permanent injuries. Second, that respondent knew that the business in which it was engaged was dangerous to the health of persons who worked at said business, but negligently failed to take any precaution against the escaping of fumes, gases and dust. Third, that respondent knew that poisonous gases, fumes and dust in large and dangerous quantities were thrown off and escaped from said substances where appellant was required to work and knew that it was dangerous to the health and safety of appellant to inhale said gases, fumes and dust, and respondent negligently failed to provide a plan or means of removing or taking up said gases, fumes or dust from the room where appellant worked, and that appellant sustained serious and permanent injuries by reason thereof. Fourth, that respondent knew that the work in which appellant was engaged was such as to produce or cause appellant to suffer or be exposed to the diseases commonly known as lead poison, lead colic or painter's colic and that respondent negligently failed to provide any devices, means or methods of preventing appellant from contracting such diseases, in violation of Section 6817, Revised Statutes 1919. Fifth, that respondent violated Section 6819, Revised Statutes 1919, by failing to provide appellant with a respirator that was in good condition, and failed to provide appellant with any sort of working clothes. Sixth, that respondent knew that appellant was an inexperienced workman about the place where powdered and dry paint, dry lead, dry zinc and dry whitening were handled but that the appellant was entirely ignorant of the danger from such poisonous gases and fumes that arose and were thrown off from said substances; that the respondent negligently failed to warn appellant of the danger to his health in working among said dangerous gases,

fumes and dust, thereby causing appellant to sustain serious and permanent injuries. Seventh, that respondent maintained its mixing machines without having the same covered and without having an exhaust pipe thereon, while said substances were being mixed and that by reason thereof great and harmful quantities of dirt, dust and fumes were caused to arise therefrom, while said mixing machines could have been covered with an exhaust pipe without materially interfering with the operation of said machines and thereby prevented said large quantities of poisonous dust and gases from arising and injuring appellant. That by reason of such negligence and failure, appellant, while in the performance of his duty, inhaled said poisonous dust, fumes and gases and sustained serious and permanent injuries. The petition then alleged that appellant suffered cramps and excruciating pains in his abdomen, that his ligaments and joints began to stiffen and weaken, and that he could not lift his arms and legs without suffering great pain and inconvenience. That by reason of all of which, appellant claimed damages in the sum of fifteen thousand dollars.

The answer to the second count of the petition alleged the unconstitutionality of Sections 6817, 6819, 6825 and 6827, Revised Statutes 1919, and also alleged that the requirements of said statutes are arbitrary and unreasonable; and further alleged that said sections do not specify the nature, kind and character of the devices or facilities to be furnished by the employer or designate or specify what shall constitute adequate or sufficient devices or facilities, and also that Section 6827 is vague, indefinite and uncertain in that it does not specify or designate the kind or character of devices to be used in carrying off poisonous fumes or the kind or character of the hood or cover or the kind of facilities to be provided and maintained by the employer for carrying off injurious dusts. The reply was a general denial.

In support of the allegations of the second count of the petition, appellant introduced evidence, both medical and otherwise, tending to support the allegations thereof, sufficient to take the case to the jury, provided the statutes upon which the same are based are constitutional. It is not necessary to detail all the appellant's evidence on this subject, but the same made out a prima-facie case.

I. After carefully examining the petition and reviewing the authorities on the subject, we are of the opinion that the action of the trial court in sustaining a demurrer to the evidence in support of the first count was correct. It has often been held by our courts that the master is not responsible for a servant overtaxing his strength, and therefore cannot be made to respond in damages for injuries re-

sulting therefrom. [Hunter v. Busy Bee Candy Co., 307 Mo. 656; Petrilli v. Swift & Co., 260 S. W. (Mo. App.) l. c. 516; Jones v. Cooperage Co., 134 Mo. App. 324.] The authorities cited by appellant in support of said count are not in point, as they do not hold that a servant who overexerts himself, when not in a position of danger and not being compelled to act hastily, creates a liability on the part of the master. For these reasons, the demurrer to the evidence in support of the first count of the petition was properly sustained.

II. As to the evidence in support of the second count, we are of the opinion that the learned trial judge erred in sustaining a demurrer thereto. On reading the answer, it will be seen that counsel for respondent attacked the constitutionality of certain statutes and claimed that they are vague, indefinite and uncertain, arbitrary and unreasonable. They further claimed that the statute requiring the employer to furnish ''adequate and approved respirators'' for the use of its employees is vague and uncertain and does not specify the nature, kind or character of the respirators to be furnished, or designate or specify what shall constitute adequate and approved respirators. The same objection is made to the statute requiring adequate devices for carrying off poisonous fumes.

Article VI, Chapter 54, Revised Statutes 1919, contains numerous provisions for the health and safety of employees. The State is interested in the health as well as the safety of those engaged in manual labor; hence our lawmakers have enacted statutes which contain many provisions for the welfare of such workers, both men and women as well as children. Bearing this in mind, let us consider the provisions. of Section 6817, ''that every employer of labor in this State engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employee to the danger of illness or disease incident to such work, trade or process, to which employees are exposed, shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or processes.''

And Section 6818, Revised Statutes 1919, provides that ''the carrying on of any process, or manufacture, or labor in this State in which antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used,

employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are hereby declared to be especially dangerous to the health of the employees.''

And Section 6819, Revised Statutes 1919 provides: ''Every employer in this State to which this article applies shall provide for and place at the disposal of the employees so engaged, and shall maintain in good condition without cost to the employees, working clothes to be kept and used exclusively by such employees while at work and all employees therein shall be required at all times while they are at work to use and wear such clothing; and in all processes of manufacture or labor referred to in this section which are productive of noxious or poisonous dusts, adequate and approved respirators shall be furnished and maintained by the employer in good condition and without cost to the employees, and such employees shall use such respirators at all times while engaged in any work productive of noxious or poisonous dusts.''

And Section 6825, Revised Statutes 1919, provides: ''All employers engaged in carrying on any process or manufacture or labor referred to in Section 6818, shall provide and maintain adequate devices for carrying off all poisonous or injurious fumes from any furnaces which may be employed in any such process or manufacture or labor, and shall also provide and maintain adequate and efficient facilities for carrying off all injurious dust, and the floors in any room or apartment where such work or process is carried on shall be kept and maintained in a smooth and hard condition, and no sweeping shall be permitted during working hours except where the floor in such work shop is dampened so as to prevent the raising of dust; and all ore, slag, dross and fume shall be kept in some room or apartment separate from the work rooms occupied by the employees, and all mixing and weighing of such ore, slag, dross or fume shall be done in such separate room or apartment, and all such material shall be dampened or covered before being handled or transported by employees.''

And Section 6827, Revised Statutes 1919, provides: ''All hoppers or chutes or similar devices used in the course of any process or manufacture referred to in Section 6818 shall be provided with a hood or covering, and an adequate and efficient apparatus or other proper device for the purpose of drawing away from the employees, noxious, poisonous or injurious dusts, and preventing the employees from coming into unnecessary contact therewith; and all conveyances or receptacles used for the transportation about or the storage in any place where any such process or manufacture or labor referred to in Section 6818 is carried on, shall be properly covered or dampened

in such a way as to protect the health of the employees, and no refuse of a dangerous character incident to the work or process carried on in any such place shall be allowed to remain accumulated on the floors thereof.''

As above stated, these sections of the statute were enacted for the purpose, the very laudable purpose, of preventing diseases among laborers, which diseases are incident to the operation of such business. Courts are not called upon to pass upon the reasonableness, the wisdom or the necessity of a legislative act, as such matters are alone for the consideration of the legislative body. [Hamilton v. St. Louis County Court, 15 Mo. l. c. 20; Henry & Coatsworth Co. v. Evans, 97 Mo. l. c. 55; State ex rel. v. Field, 119 Mo. l. c. 614.] Yet it is proper, in construing a statute, to consider the reasons prompting the lawmakers to enact the same. In speaking in behalf of this court regarding the construction of a statute, LAMM, J., said: ''To that end it is trite doctrine that we should consider the former state of the law, the new provision, the evil sought to be removed, as well as the remedy provided, and so construe the law as to further remedy and alter the evil. Such is the venerable rule of construction, none the less alive because old.'' [Decker v. Diemer, 229 Mo. l. c. 324; Westerman v. Supreme Lodge, K. of P., 196 Mo. l. c. 710; Pembroke v. Huston, 180 Mo. l. c. 636.]

It is a fact generally known, and courts will take judicial notice of it, that the inhaling of fumes, dust and gases, which result from the mixing of substances used in the manufacturing of paint will produce what is generally known as ''painter's colic,'' that the disease is accompanied by great pain and often results in permanent injury to the person afflicted therewith. An enlightened state is interested in the protection of the health, the lives and limbs of all its citizens, especially of those who are dependent upon daily labor for their support. In holding the statute constitutional, which requires belting, shafting, machines, machinery, gearing and drums in all manufacturing establishments to be safely and securely guarded, this court said that the constitutionality of such laws is no longer in doubt; and it also said that statutes providing for fire escapes, inspection of boilers, ventilation of mines, for covering and otherwise protecting machinery are also constitutional. [Lore v. American Mfg. Co., 160 Mo. l. c. 622; Cole v. Lead Co., 240 Mo. l. c. 405; Simpson v. Iron Works Co., 249 Mo. l. c. 391-7.] And this court also held that the statute requiring that the openings of all hatchways, elevators and well-holes, upon every floor of a manufacturing establishment, shall be protected, was constitutional. [Glaser v. Rothschild, 221 Mo. l. c. 208-9.]

Learned counsel insist that Sections 6817, 6819, 6825 and 6827, Revised Statutes 1919, are unconstitutional and that therefore respondent was under no obligation to furnish the means, methods or devices required by said sections. More than once this court has said that a statute is presumed to be constitutional, and that no statute will be held to be unconstitutional unless its unconstitutionality appears beyond a doubt. [State v. Cantwell, 179 Mo. 1. c. 261; State ex rel. v. Wofford, 121 Mo. 1. c. 68; State ex rel. v. Aloe, 152 Mo. 1. c. 477.]

In view of the authorities above mentioned, and those cited therein, and in view of the benefits to be derived therefrom by all the employees in such manufacturing establishment, we have no hesitation in holding that Sections 6817, 6819, 6825 and 6827, Revised Statutes 1919, are constitutional, and that they are a reasonable exercise of the police power of the State. Health measures and measures for the protection of the lives and limbs of employees have very properly been held to be legislation of the highest type and indicative of the desire of an enlightened people to help those who are in need of such assistance. [Lohmeyer v. Cordage Co., 214 Mo. 1. c. 691.]

Counsel for respondent ingeniously argue that the devices, means and methods provided for in the statute, supra, are required to be "approved and adequate," but that no provision is made as to who shall approve of them; hence, the statute is vague, uncertain and meaningless. We cannot agree with counsel's argument. Even if the word "approved" is objectionable, as counsel earnestly argue, yet in construing a statute a word may be stricken out whenever necessary to give the statute the meaning intended by the lawmakers. [Bingham v. Birmingham, 103 Mo. 1. c. 351-2; 2 Lewis-Sutherland on Statutory Construction, sec. 384; Endlich on Interpretation of Statutes, sec. 319.] By omitting the word "approved" we have the statute requiring that adequate means, methods and devices shall be provided, which certainly cannot be said to be either vague, uncertain or meaningless. But we hold that the word "approved" was not used in the sense that such device should be approved by one particular person or one particular state official, but that said word was rather used in the sense that the public approved of such means, method or device, and adopted or recognized it as a suitable means to prevent the injury which the lawmakers hoped to avoid. [Corn v. Lounge Co., 222 Mo. 1. c. 506.]

Counsel also argue that no definition is given in the statute of what the lawmakers intended should be such a device; but such a definition is unnecessary. In many statutes and ordinances, such words or

similar words are used and our courts have uniformly enforced such enactments. [Durant v. Lexington Coal Co., 97 Mo. 62.]

But respondent is in no position in this appeal to complain of the statute requiring adequate devices, means or methods to prevent such injury, for the evidence shows (appellant's evidence being all that was offered) that respondent had no devices, means or methods either for carrying off the fumes, dust and gases or for the prevention of the inhaling of the same by its employees. If the evidence showed that respondent had had certain devices, means or methods for the carrying off of fumes, dust and gases, then the question could be considered as to whether or not such devices, means or methods were adequate; but having no devices, means or methods therefor, such question cannot be considered. Here we have a clear violation of the statute, which establishes a prima-facie case of negligence. [Kenney v. Railroad, 105 Mo. l. c. 284; Butz v. Cavanaugh, 137 Mo. l. c. 511; Ashby v. Gravel Road Company, 99 Mo. App. l. c. 185.]

The same may be said regarding the statute which requires the furnishing of respirators and the furnishing of a hood or covering, adequate and sufficient for the purpose of drawing away the noxious, poisonous or injurious dusts, fumes and gases. Therefore, we are not called upon to decide whether the appliances furnished were adequate, sufficient or approved. Having failed to furnish appellant with any such devices, means or appliances, respondent cannot be heard to complain of the indefiniteness of the statute.

III. Respondent's counsel finally argue that there was no evidence on the part of the appellant tending to show that respondent could have complied with the provisions of the statute; or, to state the matter in their words, "To bring himself [appellant] within the statute, the burden was on him to prove that 'approved and effective devices, means or methods' were in use in the same or similar businesses operated by other persons and that in the ordinary course of business could have obtained such appliances and adopted such means or methods. . . . Before the jury could be permitted to find respondent guilty of negligence, there must have been proof that it was practical, feasible and possible to equip the mixers with the said appliances, and, having offered no evidence on this subject, the appellant was properly non-suited." We have been cited to the case of Pildner v. Shaw Marble & Tile Company, 239 S. W. 1095, wherein the Court of Appeals held that because there was no proof made that it was possible to guard certain dangerous machinery, and no offer of proof made, the plaintiff failed to make a prima-facie case. The plaintiff in the Pildner case based his action on the failure of the

defendant to comply with the requirements of Section 7828, Revised Statutes 190 , now Section 6786, Revised Statutes 1919. But it will be seen that that statute provides that belting, shafting, machines, etc., "when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments." (Italics ours.) Section 6817, Revised Statutes 1919, one of the sections upon which appellant bases his cause of action, says that every employer of labor "shall, for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods," etc. It will be seen that this section does not leave it to the employer to decide when he may not comply with the terms of the section by posting a notice, etc., but makes it his duty to provide effective devices, means or methods for the prevention of such industrial or occupational diseases. And Section 6819, providing for the furnishing of respirators, says that "adequate and approved respirators *shall be* furnished and maintained by the employer." No provision is there made for a discretion on the part of the employer in the manner of complying with the statute. And Section 6827 uses the word "shall" when speaking of the duty of the employer to provide a hood or covering for hoppers or chutes for the purpose of drawing away from the employees noxious, poisonous or injurious dusts.

We cannot agree with counsel that it was the duty of appellant to offer evidence that such devices, methods or means were practical, feasible or possible; nor that respondent had the same at hand or could have the same by reasonable expense.

Section 9943, Revised Statutes 1919, provides that a railroad company shall place a bell on each locomotive engine and that the same shall be rung at least eighty rods from the place where the railroad crosses a traveled public road, or that a steam. whistle shall be attached to such engine and be sounded at least eighty rods from such . crossing. We have never heard of a plaintiff, who based his cause of action on injuries resulting from the company's failure to ring the bell or sound the whistle, being required to prove that the company had a bell or a steam whistle on its locomotive, or that it could at little expense equip its locomotive with such bell or whistle, or that it was practical to do so.

Section 9948, Revised Statutes 1919, provides that a railroad company shall erect and maintain lawful fences on either side of its road where the same passes through cultivated fields, etc.; and the payment of double damages is provided for the killing of live stock where such fences are not erected and maintained. In view of the . word "shall" in said section of the statute, no plaintiff, who bases

his cause of action thereon, is required to prove that it was either feasible or necessary for the company to construct such fences, nor that such fences could have been constructed at reasonable cost.

Section 9964, Revised Statutes 1919, provides for the blocking of switches, frogs and guard rails at certain places along a railroad track; but instead of using the word "shall" the lawmakers said that all railroad companies "are hereby required" to maintain such appliances. It has never been considered a good excuse, when suit was based on the failure to block its switches, frogs and guard rails, that the blocking of the same was not feasible or that considerable expense would be incurred by reason of compliance with that statute. As Sections 6817, 6819, 6825 and 6827, Revised Statutes 1919, are imperative in their requirements, and as no exceptions are therein made, it was unnecessary for appellant to do more than to introduce evidence that respondent had violated these statutes, resulting in the injuries complained of by him.

As appellant (plaintiff) made out a prima-facie case under the second count of his petition, he was entitled to have his case passed upon by a jury, who alone is competent to decide as to the credibility of the witnesses and the weight to be given to their testimony.

The judgment of the trial court as to the first count is affirmed; and the judgment of the trial court as to the second count is reversed and the cause as to the second count is remanded. All concur.