## ST. JOSEPH LEAD CO. v. JONES.
### No. 9793.

Circuit Court of Appeals, Eighth Circuit.
April 9, 1934.

Rehearing Denied May 8, 1934.

Daniel N. Kirby, of St. Louis, Mo. (Ethan A. H. Shepley and Everett Paul Griffin, both of St. Louis, Mo., and Parkhurst Sleeth, of Bonne Terre, Mo., on the brief), for appellant.

S. D. Flanagan, of St. Louis, Mo. (Taylor Smith, of Farmington, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is an appeal from a judgment for personal injuries awarded to appellee because of the alleged negligence of appellant in failing to furnish a safe place to work, and in failing to observe the provisions of the Missouri act requiring employers to provide protection to employees from diseases. Rev. St. Mo. 1929, §§ 13252–13266 (Mo. St. Ann. §§ 13252–13266, pp. 4803–4809).

Appellant, at Desloge, Mo., operates a water softening plant, in which it was necessary to put powdered lime, sulphate of iron, and soda ash into tanks of water for the purpose of softening the water for use in the boilers of appellant's plant. The lime was poured into the tanks from 50-pound paper sacks. The sulphate of iron and soda ash were poured from metal receptacles, and in smaller quantities. Appellant claims that, at each operation of charging, it was the duty of the operator thus employed to pour into one of the tanks about 750 pounds of the lime. This was carried to the tank room in paper sacks, containing 50 pounds; one end of the sack was cut off, and the contents were poured into the tank from a position raised above it. Similarly, 220 to 230 pounds of the iron were poured into another tank, and about 86 pounds of soda ash into a third tank. This work was said to consume from forty minutes to one and one-half hours.

Although there was some height to the ceiling, and window ventilation in the building in which the tanks were situated, and although there was water in the tanks and the pouring was conducted as slowly as practicable, nevertheless dust arose in such quantities, particularly from the lime, as to cover the clothing of the employee and to enter the nasal passages to such extent as to produce burning and irritation.

Appellee testifies that he was employed by appellant November 1, 1930. He appears to have acted in the capacity of an assistant engineer in addition to his work in the water softening plant. In this latter work he had assistants at times, but it appears from the testimony that, during this employment, he was substantially in charge of the "day shift." The exact number of days on which he worked in charging the tanks is in dispute, but it sufficiently appears that, from the start, the dust had a very irritating effect, his lungs became sore and painful, and a cough developed resulting in the spitting up of blood. About the end of November, 1930, he notified his foreman that the lime dust was "killing" him, and thereafter he did no more work in the water softening plant. His condition grew worse, and he left the company December 10, 1930. Shortly thereafter he was confined to his bed for a period of seven or eight weeks, suffering from shortness of breath, soreness in the chest, and what he describes as a terrible cough. His physician, Dr. Watkins, diagnosed his trouble as a lung abscess. His temperature ran high, and an exploratory puncture of his chest found pus. To relieve this, the physician testifies: "I tapped him with a small syringe and found a fluid in his chest, that was rather a thick fluid; not as thick as pus, a true empyema. I tapped his chest six times thereafter at intervals of a week or ten days, getting out about one and a half quarts at each puncture, except the last time there was only a pint. I think it came from an inflammation of the pleural membrane of the lung. That is a secondary thing to a lung abscess; it is a complication of a lung abscess."

In the purulent exudation of secretion of the lung abscess the microscope showed many staphylococci, which are pus-producing bacilli. The testimony of the physician was that the lime dust, which entered the bronchi through the nasal passages, produced irritation, resulting in lesion. The staphylococcus, always present in the human system, lodged in this lesion and produced the abscess. At the trial, substantially two years after his initial illness, his condition is thus described by Dr. Watkins: "My conclusion was that he had abscess of the lung, and that is my opinion now. I have seen him every second week since then. He was quite a time getting so that he could get around. He still has an expectoration. The left chest is larger than the right chest; the right chest lags on respiration. He has a dullness covering one-half of his right lung, and he still has trouble in his chest, which is still an uncured abscess, although smaller than at the time when he was so desperately ill. He is not able to do physical labor. I don't think he will ever be. I think he will need frequent medical attention."

Dr. Ernst, a physician introduced by appellee, testified: "Any dust that causes an irritant may cause an abscess of the lung. Any dust; lime dust will cause an irritation. The dust fills up the small space in the lung, and then the lung revolts against the irrita-

tion and attempts to expel the dust, and in doing so may injure the lung, or weaken the lung, and an abscess may result."

Dr. McBratney, physician and surgeon, was asked, based upon his examination, his X-ray findings, and upon the history of the case stated to him in the form of a hypothetical question, to give his opinion, with reasonable certainty as to the cause of the condition he found appellee suffering from at the time of his examination. He said: "I would say that condition, primary condition started by the dust, would be an irritation of the lung, which was followed by infection, easily setting up the situation that I found on my examination."

Error is assigned to the action of the court in overruling appellant's demurrer to the petition. That demurrer was based upon the contentions that the entire Missouri act, requiring employers to provide protection to employees from diseases, is unconstitutional, in that it deprives appellant of its property without due process, takes private property for public use without compensation, and denies to appellant the equal protection of the laws; further, that section 13253 (Mo. St. Ann. § 13253, p. 4804) thereof enumerates certain poisonous chemicals, thereby excluding powdered lime dust, soda ash, or sulphate of iron from the list of dangerous elements or compounds because not mentioned, and finally that the Workmen's Compensation Commission has jurisdiction of the negligence alleged.

 It is sufficient to point out that the demurrer to the petition was properly overruled so far as the challenge to the Missouri statute is concerned, because it also charged common-law negligence in the failure to furnish appellee a safe place in which to work. But we are of opinion that the objections to the statute relied upon are not well taken. The more pertinent sections of the statute (Mo. St. Ann. §§ 13252–13254, pp. 4803, 4804) are the following:

"Sec. 13252. Employer to provide protection to employees from diseases.—That every employer of labor in this state engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employee to the danger of illness or disease incident to such work, trade or process, to which employees are exposed, shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process.

"Sec. 13253. Articles considered dangerous to health.—The carrying on of any process, or manufacture, or labor in this state in which antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used, employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are hereby declared to be especially dangerous to the health of the employees.

"Sec. 13254. Employees to be furnished with clothing—respirators to be used while at work.—Every employer in this state to which this article applies shall provide for and place at the disposal of the employees so engaged, and shall maintain in good condition without cost to the employees, working clothes to be kept and used exclusively by such employees while at work and all employees therein shall be required at all times while they are at work to use and wear such clothing; and in all processes of manufacture or labor referred to in this section which are productive of noxious or poisonous dusts, adequate and approved respirators shall be furnished and maintained by the employer in good condition and without cost to the employees, and such employees shall use such respirators at all times while engaged in any work productive of noxious or poisonous dusts."

Section 13261 (Mo. St. Ann. § 13261, p. 4807) provides that "every reasonable precaution to prevent the unnecessary creation or raising of dust" shall be adopted by the employer.

 A reading of the act in its entirety, particularly the sections quoted, demonstrates that the articles dangerous to health covered are not confined to those enumerated in section 13253 (Mo. St. Ann. § 13253, p. 4804). Section 13252 (Mo. St. Ann. § 13252, p. 4803) provides generally that it is the duty of the employer to "adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process." Section 13254 (Mo. St. Ann. § 13254, p. 4804) requires respirators to be furnished and used at all times while the employee is "engaged in any work productive of noxious or poisonous dusts." It will be observed that this paragraph distinguishes between dusts that are "noxious," and those

known to be inherently "poisonous." This distinction is drawn by the Supreme Court of Missouri, construing this statute in Dodd v. Independence Stove & Furnace Co., 330 Mo. 662, 672, 51 S.W.(2d) 114, 119, holding that the term noxious covers dusts that are "harmful or injurious to health or physical well being." The court adopts a liberal construction, considering the evils sought to be remedied and the benefit sought to be conferred, and holds that this rule of construction applies to the entire scope of the article and chapter of R. S. Mo. 1929 (Mo. St. Ann. § 13166 et seq., p. 4760) of which section 13254, supra, is a part.

In John Boll v. Condie-Bray Glass & Paint Co., 321 Mo. 92, 11 S.W.(2d) 48, the corresponding sections of R. S. Mo. 1919 are held to be a reasonable exercise of the police power and constitutional. · Without further elaboration, we think this holding is in harmony with the overwhelming weight of authority. The law, in a constitutional sense, applies to all similarly situated. The Workmen's Compensation Act (chapter 28, R. S. Mo. 1929 [Mo. St. Ann. § 3299 et seq., p. 8229]) has to do with accidents as distinguished from industrial or occupational diseases, and has no application here upon the record before us.

This ruling upon the demurrer to the petition disposes in large measure of the other specifications of error upon which reliance is placed. We have seen that there was substantial evidence to the effect that the dust inhaled was noxious, harmful, and injurious to health and potentially and actually productive of the condition suffered by appellee. Of course, in order to establish the negligence charged, it must appear that appellant had, or is presumed to have had, knowledge of the danger threatened. It was in evidence that the dust from the lime, iron sulphate, and soda ash, one or all, was injurious if inhaled, and this and other similar plants had recognized it by providing respirators for use in charging the tanks. The assistant foreman of appellant testified as follows:

"We got each one of the regular operators a respirator, and by the operators I mean the assistant engineer, Robert McGeorge, Homer Birch and Jim Corcoran. This was in the new plant. There was an extra respirator there, but I don't know whether it was right there in the plant or not. This extra respirator was laying there in the window most of the time, or hanging on a nail beside the window; the extra one was. I never told Mr. Jones where the respirators were. I don't know whether he used them or not. I don't remember whether I showed him how to operate the plant, but I had charge of it and I started the boys out. The boys were Jim Corcoran, Homer Birch and Robert McGeorge.

"Cross Examination.

"I never said anything to Mr. Jones about a respirator. I don't think I advised him to use a respirator. I can't say that I showed it to him. * * .*

"It is true that there was never any respirator furnished for Jones, but there was a respirator, after they had been broken in. But, there was an extra respirator. The extra respirator was there when I went. I recognized that they should have respirators.

"Q. In other words, this stuff was of such a dangerous character, this lime and soda ash and iron sulphate, or whatever form of iron it was, that when breathed in you realized it might cause harm, did you not; that is right, isn't it? A. Yes, sir.

"Q. And that is why the respirators were gotten for the boys? A. Yes, sir."

It is true that this witness later made a lame attempt to repudiate this testimony by claiming that he had not understood the question. However, the claim of Jones that he had not been warned of the danger nor furnished with a respirator stands practically uncontradicted, and is corroborated by the testimony of other witnesses. There was ample evidence from which the jury could have reached the verdict it did, and appellant's requested peremptory instruction to return a verdict for the defendant was properly overruled. It is conceded that neither warnings were given nor notices posted as required by law and by the exercise of due care for the safety of this employee.

There remain a number of assignments of error directed at the admission and exclusion of testimony, at the refusal of the court to charge as requested, and at the charge as given. We have examined all of these specifications and find no reversible error disclosed. The court's charge was very carefully considered and embraced clearly all the legal principles by which the case was governed. At its close no exception was taken, and a suggestion by counsel for defendant was satisfactorily treated. The result is that the judgment below must be affirmed, and it is so ordered.