FLORENCE BIESER, Administratrix of the Estate of WILLIAM BECRAFT, v. WARREN GORAN, Appellant.—100 S. W. (2d) 897.

Division One, January 5, 1937.

*James Booth* for appellant.

*Robert L. Aronson* for respondent.

COLLET, J.—Action to recover damages for injury to plaintiff's health while in the employ of defendant. A trial resulted in a verdict for $27,000. Upon *remittitur* of $7000 in the trial court, judgment was entered for $20,000. From that judgment defendant appeals. Since the trial plaintiff has died and the cause was revived in the name of his administratrix. The parties will be referred to as they existed at the time of the trial.

Defendant was engaged in the production of silicon and its preparation for use in the manufacture of glass. The process followed consisted in the mining of the stone and its delivery to a crusher at defendant's plant or "mill" where a crushing process took place resulting in a fine sand. The sand was then dried after which it was delivered to a screen through which the particles sufficiently fine for sale passed and were then conveyed to a bin preparatory to transporta-

tion for sale. This process produced a large amount of dust. Plaintiff was employed in defendant's mill and exposed to the dust created by the above-described operations. The petition alleged several grounds of negligence, viz.: failure to provide a covering for the chutes and hoppers; failure to equip the plant with blowers which would remove the dust; failure to provide respirators for plaintiff's use; failure to have plaintiff examined by a physician, and failure to post notices of the dangers incident to plaintiff's employment. All of these grounds of negligence charged are violations of statutes. [Secs. 13262, 13234, 13254, 13255 and 13264.] The evidence amply sustains the charge that defendant failed to perform some, and possibly all of these statutory obligations. Such failure constitutes negligence *per se*. [Dodd v. Independence Stove & Furnace Co., 330 Mo. 662, 51 S. W. (2d) 114; Lore v. American Mfg. Co., 160 Mo. 608, 61 S. W. 678; Boll v. Condie-Bray Glass & Paint Co., 321 Mo. 92, 11 S. W. (2d) 48.] We may therefore treat the negligence charged as being sufficiently proved without further discussion.

The important question arises from the defendant's insistence that the evidence failed to establish defendant's negligence as the cause of plaintiff's injury. Demurrers to the evidence were offered and overruled. For the purposes of this case, we may assume without discussion of the evidence on that question, that plaintiff's injuries consisted of an impairment of his lungs resulting from the inhalation of dust. The question presented by the demurrer is whether the injury resulted from dust inhaled by plaintiff while he was in the employ of defendant. Plaintiff's evidence disclosed that he entered the employ of a company referred to as the "Tavern Rock" in 1918. This company's plant was located near Pacific, Missouri. It was engaged in a business similar to that of defendant. Plaintiff's duties during this employment consisted in papering cars. In this work he was not exposed to dust to any important extent. He quit this work after about four months, but a year or two later again secured employment with the same company, working for it on this occasion for a period of three or four months. During the latter period he "fed the crusher" and was exposed to and breathed dust of the same character encountered later in defendant's plant. In the spring of 1921 or 1922 (plaintiff was not sure which) he went to work at defendant's plant near Pacific, Missouri. He papered cars for about two weeks and then began work in defendant's mill where he was employed steadily six days a week, ten hours per day, until February, 1925, when he voluntarily quit. Plaintiff gave the following testimony as to the condition of his health at the time he left defendant's employ in 1925:

"Q. Now, you left there in February, 1925? A. Yes, sir.

"Q. At that time was your health all right? A. Yes, sir.

"Q. Sir? A. Yes, sir.

"Q. Your health was perfectly all right then? A. Yes, sir.

"Q. You didn't have any trouble then at all? A. No, sir.

"Q. You weren't short-winded then? A. Not that I could notice; no, sir.

"Q. And you hadn't lost any weight then? A. I don't think so.

"Q. You don't think you had lost any weight? A. I don't think I had.

"Q. And you didn't have these spells of weakness you speak of at that time? A. No, sir; I don't think so.

"Q. In other words, your health was perfectly all right, as far as you knew, when you left there in 1925? A. As far as I knew; yes, sir.

"Q. Well, you have no symptoms; nothing that troubled you, in other words? A. No, sir."

In the spring of 1926 plaintiff went to work with the Advance Industrial Supply Company. This company was also located near Pacific, Missouri, and was engaged in the business of crushing gravel for use in the manufacture of tar paper roofing. He was employed by this company for approximately seven months and afterwards periodically for a few days at a time until the spring of 1929. He described the conditions at the roofing company plant as follows:

"Q. And that company crushes gravel and makes roofing material, does it not? A. Yes, sir.

"Q. That place is dusty, too? A. Yes, sir.

"Q. Very dusty, is it not? A. Pretty dusty.

"Q. When you went to work for the Advance in 1926 what was the condition of your health then? A. My health was all right, then I think."

No precautions were taken at that plant to protect plaintiff from the dust, or to warn him of its danger, nor was medical attention furnished.

In April, 1929, plaintiff returned to defendant's employ for a period of three months. During these three months the plant conditions were the same as in the years 1921 to 1925. Plaintiff testified that he first discovered an impairment of his health while he was working for defendant in 1929 and that he quit "because he felt that the sand was affecting him." After he left defendant's employ in June, 1929, he worked for about three weeks for a man engaged in sinking some oil wells near Pacific, but this man "skipped out" without paying him, ending that employment. Although plaintiff was not certain whether it was before or after his second employment by defendant, he thought it was afterwards that he again worked for the Tavern Rock Company in dismanteling their plant. On this work he encountered some dust. Later in 1931 he again worked for the roofing company for a short time apparently under the same conditions as formerly.

The medical testimony offered by plaintiff is sufficient upon which to base the conclusion that plaintiff was suffering with silicosis at the time of his first examination in October, 1932. The X-ray taken October 5, 1932, disclosed that the disease was in its "third stage." X-rays taken in March, 1934, disclosed the development of tuberculosis. Dr. Morrish stated at the trial that plaintiff could develop the condition he was then in by working for a period of from two to four years under the conditions described as existing at defendant's plant. Dr. Luton testified that plaintiff's condition indicated the disease was in the latter part of the intermediate stage or the beginning of the last or third stage and that tuberculosis was just beginning. Neither of the physicians who testified for plaintiff gave any estimate of the length of time necessary in which to contract silicosis other than the testimony above stated. Dr. Boisliniere, a witness for defendant, stated: ". . . it takes a long time, a very long time; several years. . . ." to contract the disease, and that plaintiff was in the very earliest stage. The witness also stated that sometimes the disease of silicosis progressed after the subject was removed from exposure to dust. Later in his testimony he stated that silicosis is ordinarily contracted in from three to six years and that where the dust is practically pure silica, as in defendant's plant, the disease may be contracted in a much shorter time, even in one year.

It will be observed from the foregoing that there is no evidence whatever upon which the jury could base a finding that plaintiff's injury was the result of his employment by defendant in 1929. That employment, as stated above, was for only a period of three months beginning in April and ending in June. It was during this period that plaintiff stated he first noticed an impairment of his health which we may assume was the silicosis condition. Plaintiff offered no evidence which indicated the necessary length of time for the development of the disease to a noticeable stage. As stated above, Dr. Morrish testified that plaintiff's employment in defendant's plant for a period of from two to four years could have given him silicosis, but he does not say what period of time, if any, would elapse from the date the disease was contracted until it became apparent to plaintiff. We have examined the testimony offered in behalf of defendant with this question in mind in order to determine whether there was evidence there to support the conclusion that the employment in 1929 could have been the cause of plaintiff's disease, and find that the shortest period of time in which any of defendant's witnesses state that silicosis could be contracted was one year, hence the conclusion, above stated, that there was no support for a finding by the jury that plaintiff's employment by defendant in 1929 caused him to contract silicosis.

When we proceed to the determination of the sufficiency of the evidence to support a finding that plaintiff's employment by de-

fendant from 1921 to 1925 caused his injury we are met with this troublesome situation: The evidence, from a standpoint favorable to plaintiff, sufficiently establishes the fact that his employment by defendant from 1921 to 1925 was of sufficient duration to have caused the injury to his health, but there is no evidence in the entire record upon which the conclusion can be based that the disease of silicosis could be contracted and then remain dormant and unnoticed from the spring of 1925, when plaintiff left defendant's employ, until some time within the period of plaintiff's second employment by defendant in 1929, when he says he first became conscious of his injury. It is true that defendant's witness, Dr. Boisliniere, testified that sometimes the disease of silicosis progressed after the subject was removed from exposure to dust but his testimony throws no light on the question of how long after the disease was contracted signs of its existence would become evident. Hence, his testimony is of no help in determining whether it was possible for plaintiff to have contracted silicosis in 1925 or prior thereto and that fact not be known to plaintiff until four years later. It may be that such is the very nature of the disease, but certainly this record does not warrant that conclusion. The result, so far as this case is concerned, is that plaintiff's testimony shows that the exposure of a person to silica dust for a period corresponding to the period of plaintiff's first employment by defendant and under the conditions described, could cause silicosis, but does not show that plaintiff's individual case of silicosis could have resulted from his exposure four years before the disease became apparent. Plaintiff argues that there being no other opportunity shown to have existed for plaintiff to have contracted silicosis, this proof was sufficient. On the other hand defendant insists that causes other than its negligence were shown, and inferentially argues that plaintiff should have excluded the other possibilities before it could say that defendant's negligence caused the injury. These arguments only tend to illustrate the reason and necessity for the rule that plaintiff, to recover, must make a complete case pointing to defendant's negligence as the cause of the injury. In passing upon this demurrer we must consider only such evidence offered by plaintiff most favorable to his recovery. In addition we consider any evidence produced by defendant's witness which may aid plaintiff's position. In doing so we exclude defendant's claim that other causes produced the injury. But when we do that and still are unable to say that the facts and reasonable inferences therefrom point to defendant as responsible for the injury a verdict against defendant cannot stand. [Coble v. St. Louis-San Francisco Ry. Co., 38 S. W. (2d) 1031; Cain v. Humes-Deal Co., 329 Mo. 1107, 1114, 49 S. W. (2d) 90; Beaber v. Kurn (Mo. App.), 91 S. W. (2d) 70; State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 28 S. W. (2d) 97.] Such was the situation in this case. The cases of Dodd v. Independence Stove & Furnace Co., 330

Mo. 662, 51 S. W. (2d) 114, and Boll v. Glass & Paint Co., 321 Mo. 92, 11 S. W. (2d) 48; Langeneckert v. St. Louis Sulphur & Chemical Co. (Mo. App.), 65 S. W. (2d) 648; Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S. W. (2d) 328; Pevesdorf v. Union Electric Light & Power Co., 333 Mo. 1155, 64 S. W. (2d) 939, cited by respondent, are all cases where the injuries became apparent during the course of the employment and were clearly the result of the employment. Hence those cases are not authority here.

Defendant's demurrer to the evidence should have been sustained, hence the judgment must be reversed. It is so ordered. All concur.